**STATE OF CONNECTICUT**

v.

**LEVI STRAUSS & COMPANY.**

Civ. No. H–78–455.

United States District Court,
D. Connecticut.

May 31, 1979.

Gerard J. Dowling, Asst. Atty. Gen., Hartford, Conn., for plaintiff.

Stephen V. Bomse, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., Robinson, Robinson & Cole, Hartford, Conn., for defendant.

## RULING ON PLAINTIFF'S MOTION FOR REMAND

NEWMAN, District Judge.

The State of Connecticut seeks to remand the antitrust damage suit that it brought in state court against Levi Strauss & Company (Levi Strauss), which Levi Strauss removed on both federal question and diversity grounds. 28 U.S.C. § 1441(b). Connecticut claims that its suit involves no federal question, 28 U.S.C. § 1331, and that diversity jurisdiction is unavailable because Connecticut is not a citizen and because the jurisdictional amount requirement has not been met, 28 U.S.C. § 1332.

The action was filed in the Hartford Superior Court on August 7, 1978. The State charged Levi Strauss with violations of the Connecticut Antitrust Act, Conn.Gen.Stat. §§ 35–24 to 35–45, between roughly October 1, 1971, and January 1, 1977. Specifically, Connecticut claims that Levi Strauss acted with co-conspirators to restrain trade in connection with the distribution and retail sale of its products ("jeans" and other casual clothing) to consumers in Connecticut. Conn.Gen.Stat. §§ 35–26, 35–28. Levi Strauss, a large national firm incorporated in Delaware and headquartered in San Francisco, is alleged to have engaged in Connecticut in a continuing contract, combi-

nation or conspiracy to fix prices by threatening and coercing its dealers in various ways, by terminating dealers who did not comply, and by refusing to deal with prospective dealers who Levi Strauss believed would not comply. The State has brought the action in its enforcement capacity, Conn.Gen.Stat. § 35–32(a), and as *parens patriae* for (or class representative of) its residents who have suffered damages from alleged artificially high prices and impaired competition, Conn.Gen.Stat. § 35–32(c).

### Federal Question Jurisdiction

Levi Strauss asserts that the facts alleged in the complaint are sufficient to state a claim within the federal question jurisdiction of this Court. Whatever the statutory label that Connecticut applies to its cause of action, Levi Strauss says that the factual allegations state a claim for violation of the federal antitrust laws. Connecticut acknowledges that the facts would support a federal antitrust claim, if it had chosen to plead a violation of federal law. But Connecticut insists that it is entitled to exercise its prerogative to plead only a state antitrust law claim to the exclusion, it contends, of other available claims.[1]

Generally the plaintiff determines by the allegations of his complaint whether the case is removable as one arising under the laws of the United States, *Great Northern Railway v. Alexander*, 246 U.S. 276, 282, 38 S.Ct. 237, 62 L.Ed. 713 (1918), since the existence of a federal question must appear on the face of a complaint, *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–28, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974); *Gully v. First National Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 81 L.Ed. 70 (1936). "[T]he party who brings a suit is master to decide what law he will rely upon, and therefore does determine whether he will bring a 'suit arising under' [the laws] of the United States by his declaration or bill." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22,

25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). A plaintiff alleging facts that would support both a federal and a state law claim is free to confine his claim to one based on state law and proceed in state court. *La Chemise Lacoste v. Alligator Co.*, 506 F.2d 339 (3d Cir. 1974); *Brough v. United Steelworkers of America, AFL–CIO*, 437 F.2d 748 (1st Cir. 1971); *Peterson v. Brotherhood of Locomotive Firemen and Enginemen*, 272 F.2d 115, 119 (7th Cir. 1959); *Fischer v. Holiday Inn of Rhinelander, Inc.*, 375 F.Supp. 1351 (W.D.Wis.1973); *Cue Publishing Co. v. Colgate-Palmolive Co.*, 233 F.Supp. 443 (S.D.N.Y.1964); *J. H. Smith Co. v. Jordan Marsh Co.*, 161 F.Supp. 659 (D.Mass.1958); *M. & D. Simon Co. v. R. H. Macy Co.*, 152 F.Supp. 212 (S.D.N.Y.1957); see *Pan American Petroleum Corp. v. Superior Court*, 366 U.S. 656, 662–63, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961); *Hearst Corp. v. Shopping Center Network, Inc.*, 307 F.Supp. 551, 556 (S.D.N.Y.1969); see generally, 1A Moore's Federal Practice ¶ 0.160 at 185 (2d ed. 1974).

Standing in arguable opposition to this substantial line of authority are two decisions within the Second Circuit, *Beech-Nut, Inc. v. Warner-Lambert Co.*, 346 F.Supp. 547 (S.D.N.Y.1972), *aff'd*, 480 F.2d 801 (2d Cir. 1973), and *Ulichny v. General Electric Co.*, 309 F.Supp. 437 (N.D.N.Y.1970), both approving removal of what the plaintiffs may have believed were state law claims, on the ground that the complaints pleaded causes of action arising under the Lanham Act, 15 U.S.C. § 1125(a). Neither case establishes a sufficient basis for ignoring the settled rule that the pleader may elect to pursue only a state law claim. In *Beech-Nut* both the District Court, 346 F.Supp. at 548, and the Court of Appeals, 480 F.2d at 803, observed that the case "could have been" brought in federal court under the Lanham Act. The absence of any discussion obscures whether the courts meant that the facts alleged in the complaint were

---

1. Connecticut also suggests that the facts pleaded would support a claim for violation of the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42–110a *et seq.*, and of various common law standards. Nevertheless Connecticut prefers to stand or fall on its state antitrust law claim, an election specified on the face of the complaint. *Cf. Minkoff v. Scranton Frocks, Inc.*, 172 F.Supp. 870, 873 n. 4 (S.D.N.Y.1959).

sufficient to support a federal claim that "could have been" pleaded by the plaintiff, or that the plaintiff did in fact plead a federal claim that "could have been" brought initially in the federal court. In the Court of Appeals the appellee urged the latter position, pointing out that papers attached to the complaint were properly to be interpreted as the pleading of a federal claim. Appellee's Br. 2, 5. Apparently the Court of Appeals agreed with that contention. *Ulichny* also contains a similar ambiguity. The District Court stated that the "heart of the suit" related to "an integral issue involving federal law." 309 F.Supp. at 440. If this meant the pleader had alleged a claim that was really federal, the result is consistent with the weight of authority; if it meant that a state claim was pleaded, but a federal claim was available to be pleaded, removal jurisdiction on that basis would be contrary to controlling precedent.

Despite the pleader's intention to plead only a claim under state law, many courts have held that the suit may nonetheless be deemed to arise under federal law if the state law relied on by the pleader has been preempted by federal law. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *New York v. Local 144, Hotel, Nursing Home & Allied Health Services Union*, 410 F.Supp. 225 (S.D.N.Y.1976); *Hearst Corp. v. Shopping Center Network, Inc., supra; Sylgab Steel & Wire Corp. v. Strickland Transportation Co.*, 270 F.Supp. 264 (E.D.N.Y. 1967); *Minkoff v. Scranton Frocks, Inc.*, 172 F.Supp. 870 (S.D.N.Y.1959); *Fay v. American Cystoscope Makers, Inc.*, 98 F.Supp. 278 (S.D.N.Y.1951). Other courts have noted

the rule that preemption is a matter of defense to a state law claim and concluded that preemption does not convert an invalid state law claim into a sufficient and removable federal law claim. *Washington v. American League of Professional Baseball Clubs*, 460 F.2d 654, 660 (9th Cir. 1972); *Lowe v. Trans World Airlines, Inc.*, 396 F.Supp. 9, 12 (S.D.N.Y.1975) (alternate holding); see also *Application of New York*, 362 F.Supp. 922, 928 (S.D.N.Y.1973).[2]

This dispute among the cases concerns the consequences of traditional preemption, *i. e.*, circumstances where the substantive state law relied on by the plaintiff has been entirely displaced by Congress, expressly or impliedly, by the enactment of federal legislation. Preemption in that sense is not present in this case, since in the area of antitrust law, Congress has neither expressed the clear intent, see *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), nor acted so as to imply, *Cloverleaf Butter Co. v. Patterson*, 315 U.S. 148, 62 S.Ct. 491, 86 L.Ed. 754 (1942), that it has displaced state law from the field. See *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 131–33, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978); *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 495, 69 S.Ct. 684, 93 L.Ed. 834 (1949); *Standard Oil v. Tennessee*, 217 U.S. 413, 30 S.Ct. 543, 54 L.Ed. 817 (1910); 1 P. Areeda & D. Turner, *Antitrust Law* ¶ 208, at 58–59 (1978) [hereafter "Areeda & Turner"]. Even state law that prohibits more than federal antitrust statutes is not necessarily in conflict with, and preempted by, federal law, since the toleration of certain conduct by federal law does not imply an affirmative policy in favor of that conduct. *Ibid.*[3]

**2.** It is not clear whether the courts that view preemption as a defense and therefore leave the pleader of a preempted state law claim to proceed (to defeat) in state court would permit the pleader to file a new suit based on the preempting federal law either in state court, from which it would clearly be removable, or directly in federal court. If the claim can be refiled as a federal claim, it seems pointless to remand the losing state law claim. On the other hand, if these courts would hold the

pleader to have split his cause of action and would consider the adverse ruling on the state law claim as *res judicata* with respect to a subsequent allegation of the same facts as a federal law claim, then a remand, though harsh, is at least dispositive.

**3.** A difference in remedies available under state and federal law is not necessarily a conflict resulting in preemption. *See Ohio ex rel. Brown v. Klosterman French Baking Co.*, [1977–1] Trade Cases (CCH) ¶ 61,361 (S.D.Ohio

■ Aside from the question of preemption, however, there remains the possibility that Connecticut's antitrust law has been displaced by the negative implication of the Commerce Clause. The statute would be unconstitutional if it operated to impose an undue burden on interstate commerce, i. e., when the significance of the effects on commerce outweigh legitimate local benefits. See *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970); *Flood v. Kuhn,* 443 F.2d 264, 267–68 (2d Cir. 1971), aff'd, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972). Such a balancing test may resemble preemption analysis, see G. Gunther, *Constitutional Law* 357–60 (9th ed. 1975), but does not involve the often illusory search for congressional intent concerning matters that might never have been considered at the time a federal law was enacted. See 1 Areeda & Turner, *supra,* ¶ 220e, at 131–33.

Levi Strauss contends that the Connecticut statutes in issue here do impose undue burdens on interstate commerce. The "local" interests are said to be minimal, in that the objective of attacking price-fixing is not differentiated from other states' interest in the same goal. The burdens, on the other hand, are asserted to be substantial: if state antitrust law is the same as federal law, Levi Strauss faces a series of what it terms costly and duplicative suits in the courts of different states; to the extent state and federal laws differ and state statutes are more exacting, Levi Strauss fears that it will have to comply with the strictest standard, which would then in effect preempt federal law, cf. *Southern Pacific Co. v. Arizona,* 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945).

■ It is not at all clear that the *Pike* criterion of a "legitimate local interest" requires an objective of *peculiarly* and predominantly local character. Price-fixing in a region or a state is no less local because

it may also occur elsewhere. Nor is a burden on a company to defend a variety of lawsuits an undue burden (if any burden at all) on commerce. The Commerce Clause protects the interstate market, not particular interstate firms. *Cf. Exxon Corp. v. Governor of Maryland, supra,* 437 U.S. at 127–28, 98 S.Ct. 2207. Uniformly applied prohibitions of price-fixing would not seem to inhibit the flow of goods between states. *Cf. Procter & Gamble Co. v. City of Chicago,* 509 F.2d 69, 77 (7th Cir. 1975). Even if Levi Strauss had to meet in Connecticut a stricter standard concerning resale price maintenance than that imposed by other states or by federal law, variation in permissible pricing practices is not inevitably an undue burden on commerce. Such a burden is far less than that of different and possibly conflicting requirements for equipment moving along interstate highways, for example. *Cf. Bibb v. Navajo Freight Lines, Inc.,* 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959).

■ These issues are not appropriate for resolution at this point, however, because they depend on questions of state law that have not yet been authoritatively answered. In construing the Connecticut Antitrust Act, the courts of Connecticut may be guided by decisions of federal courts concerning similar provisions of the federal antitrust laws. See *Mazzola v. Southern New England Telephone Co.,* 169 Conn. 344, 348, 363 A.2d 170 (1975); *Connecticut Association of Clinical Laboratories v. Connecticut Blue Cross, Inc.,* 31 Conn.Supp. 110, 115, 324 A.2d 288 (1973). But state law will not necessarily be interpreted identically to federal provisions, and the extent of the differences may affect constitutionality.

The uncertainty concerning state law suggests the possibility of abstention. Difficult and undecided questions of state law have been presented "bearing on policy

1976) (four-year statute of limitations for federal antitrust claims does not preempt longer state statute of limitations and damage period). Thus, the fact that a federal *parens patriae* remedy is available only for events after the Hart-Scott-Rodino amendments came into ef-

fect in October, 1976, see Pub.L.No.94–435, § 301, 90 Stat. 1394–95 (1976), does not automatically preclude a more severely retroactive application of the Connecticut *parens patriae* statute, Conn.Gen.Stat. § 35–32, if that law is construed to differ from federal law.

problems of substantial public import whose importance transcends the result in the case . . . at bar. *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25 [, 79 S.Ct. 1070, 3 L.Ed.2d 1058] (1959) . . : .." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). *Cf. Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The way Connecticut courts interpret the local antitrust law, virtually unconstrued at present, will have significant effects on business and regulatory practices alike. The sensitive issues presented here should be first considered by the courts of the state.

■ In the situation presented, the proper course is not for this Court to stay its hand and retain jurisdiction, see *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), but to remand the case entirely. *Cf. Washington v. American League of Professional Baseball Clubs, supra,* 460 F.2d at 659–60. Any construction given Connecticut antitrust law by a state court would prevent removal to this Court. Were the state court to construe the law in a way that avoids any undue burden on interstate commerce, the case could proceed in state court on the state law claim. See *California v. California & Hawaiian Sugar Co.,* 588 F.2d 1270 (9th Cir. 1978) (complaint asserting claims under California antitrust law found not to state a federal claim, and remanded); *Caraway v. Ford Motor Co.,* 148 F.Supp. 776 (W.D.Mo.1957) (common law action for fraudulent misrepresentation and conspiracy, not preempted by federal

antitrust law; case remanded); *Massachusetts v. McHugh,* 71 F.Supp. 516 (D.Mass. 1947) (complaint alleging violations of state antitrust law did not present federal question, despite similarity of state and federal laws; remanded).

■ On the other hand, if the Connecticut court should feel impelled to give the state statute a construction that encounters insurmountable constitutional objections, then that court would have no alternative but to find the state law unconstitutional. In that event, only federal antitrust law would be available in this case. But any claim resting solely on federal antitrust law would be within the exclusive jurisdiction of the federal court. The claim would have to be dismissed by a state court, and could not be removed to a federal court. Since a federal court's derivative removal jurisdiction is available only as to a case within a state court's jurisdiction, removal of such a claim from state court would be improper, and dismissal would be required under the anomalous but enduring authority of *Lambert Run Coal Co. v. Baltimore & Ohio Railroad,* 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671 (1922). See *Freeman v. Bee Machine Co.,* 319 U.S. 448, 451, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943); *Washington v. American League of Professional Baseball Clubs, supra,* 460 F.2d at 658–59; *Meyer v. Indian Hill Farm, Inc.,* 258 F.2d 287, 290 (2d Cir. 1958).

■ It would be inappropriate to anticipate the results of deliberations by the state court.[4] As of now, the complaint presents

---

4. It would be equally inappropriate, and unavailing, for this Court to proceed with construction of the state statute. If this Court construed state law to be constitutional, a remand to proceed under valid state law would occur. If this Court found state law, as construed, unconstitutional, the plaintiff's available claim under federal antitrust law would still not be within the removal jurisdiction of this Court, because of *Lambert Run.*

Moreover, any constitutional objection to the validity of the state statute is technically a matter of defense, which traditionally cannot be used as the basis for federal question jurisdiction. *Louisiana & Nashville Railroad v.*

*Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). A federal court's disregarding the defensive nature of the contention that the state law is unconstitutional, and adjudicating that question before the state court has a chance to do so, would propel it into adjudication not only of the constitutional issue but also, preliminarily, of the contours of the state statute. This is a further reason not to rest federal question jurisdiction on what is in essence a defense contention.

The danger of anticipatory federal court construction of a state statute does not normally arise in cases involving statutory preemption. In those cases the issue is typically whether

no claim arising under federal law. Any resolution of unsettled issues of state antitrust law that could lead to presentation of a federal claim should be made by the courts of Connecticut.

### Diversity Jurisdiction

■■■■ Levi Strauss' contention that Connecticut's claim is removable within the diversity jurisdiction of this Court raises issues concerning the status of the plaintiff as a citizen of a state and the existence of a claim in excess of the required $10,000 jurisdictional amount.[5] Analysis is complicated by the fact that Connecticut seeks several types of monetary awards, and it does so in different capacities. Diversity jurisdiction requires diverse citizenship and a claim in excess of the jurisdictional amount. Connecticut's suit does not satisfy both requirements simultaneously with respect to any single element of its monetary claim. Cf. Title Guaranty & Surety Co. v. Idaho ex rel. Allen, 240 U.S. 136, 140–41, 36 S.Ct. 345, 60 L.Ed. 566 (1916).

Connecticut seeks four types of monetary awards. The basic claim is for recovery of the alleged unlawful overcharges incurred by the citizens of Connecticut who purchased Levi Strauss products. Connecticut intends to return the overcharges to all identifiable purchasers. Second, Connecticut seeks to collect and proposes to keep as state funds all provable overcharges that cannot feasibly be returned to identifiable purchasers. Third, Connecticut sues for $250,000 as a civil penalty authorized by Conn.Gen.Stat. § 35–38. Finally, Connecticut seeks an award of attorney's fees.

■■■■ Consideration of the status of the plaintiff in seeking to recover these four elements of the money claim must start with the longstanding, if somewhat metaphysical, principle that "a state cannot, in the nature of things, be a citizen of any State." Stone v. South Carolina, 117 U.S. 430, 433, 6 S.Ct. 799, 800, 29 L.Ed. 962 (1886); see also Illinois v. City of Milwaukee, 406 U.S. 91, 97 n.1, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972); Postal Telegraph Cable Co. v. Alabama, 155 U.S. 482, 487, 15 S.Ct. 192, 39 L.Ed. 231 (1894). Thus to the extent that Connecticut is suing in its sovereign capacity, its claim cannot be brought within the diversity jurisdiction of a district court.[6] But Levi Strauss contends that this case is different because Connecticut is suing to some extent as parens patriae for the victims of defendant's allegedly unlawful pricing practices.

■■■■ If Connecticut were suing as parens patriae for the benefit of all of its citizens, its capacity would be essentially sovereign, and it would not be a citizen for diversity purposes. But it has long been recognized that a state can act as parens patriae for a circumscribed group of its

---

federal law has filled the field; the focus of inquiry is on the reach and effect of the federal statute, and construction of state statutes is rarely involved. In such a situation, it may be legitimate for a federal court to which a state claim has been removed to adjudicate the contention that state law has been preempted by a federal statute, rather than treat preemption as a defense and remit to the state court what is obviously an important federal question, even though one that occurs in a suit arguably not arising under federal law.

5. Although this is a suit between a state and a citizen of another state, it may not be brought under 28 U.S.C. § 1251(b)(3). That section, giving original but not exclusive jurisdiction of such suits to the Supreme Court, allows for concurrent jurisdiction in the district courts. But it does not confer jurisdiction on those courts. Ohio v. Wyandotte Chemicals Corp., 401 U.S. 493, 498 n.3, 91 S.Ct. 1005, 28 L.Ed.2d

256 (1971); C. Wright, Federal Courts 559 (3d ed. 1976). A specific statutory basis for district court jurisdiction is required, such as the diversity grant of 28 U.S.C. § 1332.

6. Clearly Connecticut would be acting as a sovereign if it were considered to be bringing this suit in its enforcement capacity. Access to diversity jurisdiction is not aided by considering Connecticut as representative of a class, even assuming that Connecticut could be a member of a consumer class and its adequate representative, with typical claims. The citizenship of a class is determined by the citizenship of its representative, Snyder v. Harris, 394 U.S. 332, 340, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); Supreme Tribe of Ben Hur v. Cauble, 255 U.S. 338, 41 S.Ct. 338, 65 L.Ed. 673 (1921), and in pressing any claim of its own as representative of a class, Connecticut would be acting as a sovereign.

citizens. Indeed, states seeking to invoke the original jurisdiction of the Supreme Court in their capacities as sovereigns, see *New York v. New Jersey,* 256 U.S. 296, 41 S.Ct. 492, 65 L.Ed. 937 (1921); *Georgia v. Tennessee Copper Co.,* 206 U.S. 230, 27 S.Ct. 618, 51 L.Ed. 1038 (1907), have been rebuffed whenever it appeared that their real claim was being brought only on behalf of particular citizens. *Pennsylvania v. New Jersey,* 426 U.S. 660, 665–66, 96 S.Ct. 2333, 49 L.Ed.2d 124 (1976); *Oklahoma v. Atchison, Topeka & Santa Fe Railroad,* 220 U.S. 277, 31 S.Ct. 434, 55 L.Ed. 465 (1911); see *Louisiana v. Texas,* 176 U.S. 1, 20 S.Ct. 251, 44 L.Ed. 347 (1900); *New Hampshire v. Louisiana,* 108 U.S. 76, 2 S.Ct. 176, 27 L.Ed. 656 (1883).[7] Presumably, a state's role in suing on behalf of particular citizens sufficiently dispenses with its sovereign capacity not only to bar access to the Supreme Court's original jurisdiction but also to gain access to the district courts' diversity jurisdiction (assuming diverse citizenship of the defendant and jurisdictional amount).

When Connecticut claims refunds to be distributed to identifiable purchasers, the citizen status of the purchasers rather than the sovereign status of their benefactor controls for diversity purposes. However, while that analysis satisfies the citizenship requirement, it fails to satisfy the requirement of jurisdictional amount. The aggregation of distinct claims of separate individuals in one suit does not permit an aggregation of the amount of their claims. See *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) (class actions). Each individual from whom Connecticut seeks a refund has a claim of no more than a few dollars; no one seeks anything close to the $10,000 required of each claimant. See *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1974); *cf. Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 346–48, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Insofar as Connecticut presents claims of individuals, and thereby satisfies the citizenship requirement for diversity jurisdiction, it seeks discrete recoveries upon separate proof, and fails to meet the jurisdictional amount requirement.

The second, third, and fourth elements of Connecticut's money claim satisfy the jurisdictional amount requirement, but as to these elements, Connecticut is acting in its sovereign capacity and cannot satisfy the citizenship requirement. In seeking recovery of overcharges, Connecticut is not necessarily limited to evidence of purchases by identifiable buyers. If Connecticut's *parens patriae* statute, Conn.Gen.Stat. § 35–32, were construed to be the same as the federal provision, Pub.L.No.94–435, § 301, 90 Stat. 1395 (1976), damages could be proved in the aggregate by sampling or other statistical methods, or any other reasonable computation. Any fund thus collected would exceed the refunds available for identifiable purchasers and leave some portion available for disbursement to the state. *Cf. West Virginia v. Charles Pfizer & Co.,* 440 F.2d 1079, 1090–91 (2d Cir. 1971); see also *In re Antibiotic Antitrust Actions,* 333 F.Supp. 278, 281–82 (S.D.N.Y.1971). Connecticut's antitrust law provides for the receipt of such funds. Conn.Gen.Stat. § 35–32a. The funds deposited with the state and not returned to purchasers may well exceed $10,000.

Moreover, the $250,000 sought as a civil penalty obviously exceeds the requisite jurisdictional amount. Finally, the attorney's fees Connecticut seeks are an element of damages to be included in satisfying the

---

**7.** In *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972), which included a *parens patriae* claim alleging violations of federal antitrust laws, complaints of injury to the "general economy" of the state did not change the nature of the claim from one in which the state was really putting forth the claims of many individuals. *Id.* at 262–64, 92 S.Ct. 885. The subsequently enacted § 4C of the Clayton Act, added by the Hart-Scott-Rodino Antitrust Improvement Act of 1976, Pub.L.

No.94–435, § 301, 90 Stat. 1394–95 (1976), now authorizes the attorney general of any state to bring a *parens patriae* suit, in the name of the state, on behalf of those who have sustained injury through violations of the Sherman Act. *But cf. Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). A similar provision exists in Connecticut law. Conn.Gen.Stat. § 35–32. But those authorizations do not change the nature of the suits.

jurisdictional amount, since they are authorized by statute as recoverable in an antitrust action, Conn.Gen.Stat. § 35–35. See *Missouri State Life Ins. Co. v. Jones,* 290 U.S. 199, 54 S.Ct. 133, 78 L.Ed. 267 (1933); *Batts Restaurant, Inc. v. Commercial Insurance Co.,* 406 F.2d 118, 120 (7th Cir. 1969); *cf. Givens v. W. T. Grant Co.,* 457 F.2d 612, 614 (2d Cir.), *vacated on other grounds,* 409 U.S. 56, 93 S.Ct. 451, 34 L.Ed.2d 266 (1972). The amount of such fees can reasonably be expected to exceed $10,000.

However, the claim Connecticut makes for the remainder of overcharges not to be distributed to identifiable purchasers, for civil penalties, and for attorney's fees is brought in its sovereign capacity. These funds are not sought for any specific individuals or group of individuals. The funds would belong to the state. In seeking them, Connecticut cannot satisfy the citizenship requirement of diversity jurisdiction.

Thus, as to no one element of its money claim can Connecticut simultaneously satisfy the citizenship and jurisdictional amount requirements.

### Conclusion

Neither federal question nor diversity jurisdiction is properly invoked in this case. The motion of the State of Connecticut to remand is granted.