**STATE OF NEW YORK, by Robert ABRAMS, Attorney General of the State of New York, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

No. 82 Civ. 2600 (GLG).

United States District Court, S. D. New York.

Sept. 21, 1982.

Robert Abrams, Atty. Gen. of N. Y., New York City (Bureau of Consumer Frauds and Protection: Melvyn R. Leventhal, Asst. Atty. Gen. In Charge, Mary Hilgeman, Harvey M. Berman, Reed K. Brody, Asst. Attys. Gen., New York City, of counsel), for plaintiff.

Simpson Thacher & Bartlett, New York City (Roy L. Reardon, Bruce D. Angiolillo, Michael J. Chepiga, New York City, of counsel), and Otis M. Smith, Gen. Counsel, Detroit, Mich. (Louis H. Lindeman, Jr., Detroit, Mich., of counsel), for defendant.

GOETTEL, District Judge:

This action arises from consumer complaints about alleged defects in the General

Motors (GM) Turbo Hydra-Matic 200 automatic transmission (THM 200). Suing under section 63(12) of the New York Executive Law,[1] the State of New York, by its Attorney General, alleges that GM has engaged in "repeated and persistent fraudulent and illegal business practices in connection with its sale, warranting, and repair of automobiles equipped with the [THM 200]." Complaint ¶ 3. It seeks restitution for aggrieved consumers and various forms of injunctive relief.

The State originally commenced this action in New York State Supreme Court on March 24, 1982.[2] Shortly thereafter, GM removed the case to this Court on the basis of diversity of citizenship. Before this Court is the State's motion to remand the case on the ground that diversity jurisdiction does not exist. *See* 28 U.S.C. § 1447(c) (1976).

■ It is well established that a state is not a citizen for diversity purposes. *Moor v. County of Alameda,* 411 U.S. 693, 717, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973); *Ohio v. Wyandotte Chemicals Corp.,* 401 U.S. 493, 498 n. 3, 91 S.Ct. 1005, 1009 n. 3, 28 L.Ed.2d 256 (1971). It is equally well established, however, that the citizenship of a nominal or formal party is disregarded in determining the existence of diversity; only

those with a real and substantial interest in the controversy are considered. *Navarro Savings Association v. Lee,* 446 U.S. 458, 460–61, 100 S.Ct. 1779, 1781–82, 64 L.Ed.2d 425 (1980); *see* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1556 (1971). This is the principle underlying the removal from state court. GM argues that the State of New York is merely a nominal party representing the interests of New York consumers who allegedly have been defrauded by GM's actions concerning the THM 200. Thus, according to GM, diversity exists because the real plaintiffs are citizens of New York and the defendant, GM, is a citizen of Delaware and Michigan. The State, on the other hand, argues that it has a real interest in this controversy, and thus, that a remand is warranted because the Court does not have diversity jurisdiction.[3] An examination of the nature and effect of this lawsuit leads this Court to agree with the State.

■ As noted above, the State brought this action in response to numerous complaints about the THM 200. Essentially, it seeks three types of relief.[4] First, it seeks redress for those who have already purchased automobiles equipped with the THM 200. Second, it seeks to protect prospective purchasers of automobiles equipped with

---

**1.** New York Executive Law § 63(12) provides, in part, that

> [w]henever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York, on notice of five days, for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, directing restitution and damages and, in an appropriate case, cancelling any certificate filed under and by virtue of the provisions of section four hundred forty of the former penal law or section one hundred thirty of the general business law, and the court may award the relief applied for or so much thereof as it may deem proper.

N.Y.Exec.Law § 63(12) (McKinney 1982).

**2.** All actions brought pursuant to New York Executive Law § 63(12) must be commenced in New York State Supreme Court. N.Y.

Exec.Law § 63(12) (McKinney 1982); *see* note 1 *supra.*

**3.** Alternatively, the State argues that, even if it is not a real party in interest, diversity is lacking because the alleged real parties in interest (consumers who bought cars equipped with the THM 200 in New York) include citizens of Michigan and Delaware, the states of GM's citizenship. The State also argues that, if the individual consumers are the only real parties in interest, the amount in controversy requirement for diversity jurisdiction has not been met because each individual claim amounts to less than $10,000. The Court, however, need not reach the merits of these alternative arguments.

**4.** Specifically, the State seeks a judgment

1. Permanently enjoining GM, its divisions, subsidiaries and agents:

(A) to reimburse all present or former owners of automobiles equipped with a THM 200 transmission for all costs and incidental expenses for the repair or replacement of

the THM 200 by requiring full disclosure, prior to purchase, of the defects in and problems with the THM 200. Finally, it seeks to protect prospective purchasers of all GM vehicles by requiring disclosure of all known defects in or problems with vehicles as well as the existence of any significant new part, component, or system design. The purpose of seeking this wide-ranging relief is not merely to vindicate the interests of a few private parties. Rather, it is to take a step toward eliminating fraudulent and deceptive business practices in the marketplace. Indeed, the State believes that imposition of the requested sanctions would have the effect of requiring all manufacturers to inform prospective purchasers of known defects in or problems with a part or design. Memorandum of Law in Support of [the State's] Motion to Remand at 6 (quoting Attorney General's press release announcing this lawsuit). This would enhance the economic well-being of all, not merely a few, New York consumers.

The State's goal of securing an honest marketplace in which to transact business is a quasi-sovereign interest.[5] *Kelley v. Carr,* 442 F.Supp. 346, 356–57 (W.D.Mich.1977) ("[s]urely some of the most basic of a state's quasi-sovereign interests include maintenance of the integrity of markets and ex-

their transmission incurred after the first twelve months or 12,000 miles of use;

(B) to provide extended warranty protection for all present owners of automobiles equipped with defective THM 200 transmissions;

(C) from selling automobiles equipped with THM 200 transmissions unless prior to sale, conspicuous written notice is given which:

i. describes the serious problems and defects found in the THM 200 transmissions,

ii. describes the symptoms indicating the serious problems or defects, and

iii. states the repair or maintenance procedures or use which might prevent or minimize such serious problems or defects;

(D) to take appropriate steps to notify subsequent purchasers of vehicles equipped with the THM 200 transmission of the information described in paragraph (C) above;

(E) to establish procedures for determining the existence of serious problems or defects in any vehicle or part it manufactures;

(F) to notify owners, prospective purchasers, and any other interested parties of the nature, extent, symptoms, repair procedures, method of minimizing or avoiding, and other relevant information about serious problems or defects which defendant knows or should know have occurred, are occurring or are likely to occur in its vehicles using methods including but not limited to the following:

i. advertising,

ii. notification by and through defendant's dealers, or

iii. direct notification by mail or otherwise;

(G) to notify owners, prospective purchasers, and other interested members of the public of the availability of the information set forth in paragraph (F) above, by methods including but not limited to the following:

i. advertising,

ii. notification by and through defendant's dealers,

iii. direct notification by mail or otherwise, or

iv. disclosures at the point-of-sale and in warranty booklets and owners' manuals;

(H) to give conspicuous written notice to prospective purchasers of any vehicle in which a significant new part, component, or system design is installed describing such new design and the manner and extent to which it may affect the reliability, durability, or performance of the vehicle;

2. Granting costs pursuant to CPLR 8303(a)(6) and such other and additional relief the Court deems just and proper.

Complaint, Wherefore clause.

5. The concept of quasi-sovereign interests finds its origin in the cases dealing with *parens patriae* standing. Broadly stated, quasi-sovereign interests

consist of a set of interests that the state has in the well-being of its populace.

\* \* \* \* \*

Although the articulation of such interests is a matter for case-by-case development—neither an exhaustive formal definition nor a definitive list of qualifying interests can be presented in the abstract—certain characteristics of such interests are so far evident. These characteristics fall into two general categories. First, a state has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general. Second, a state has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system.

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez* (1982), —— U.S. ——, ——–——, 102 S.Ct. 3260, 3265–3269, 73 L.Ed.2d 995; *see Puerto Rico ex rel. Quiros v. Bramkamp,* 654 F.2d 212, 215–17 (2d Cir. 1981), *cert. denied,*

changes operating within its boundaries, [and] protection of its citizens from fraudulent and deceptive practices"). *See generally Ohralik v. Ohio State Bar Association,* 436 U.S. 447, 462, 98 S.Ct. 1912, 1921, 56 L.Ed.2d 444 (1978) (in a first amendment context, the Supreme Court noted that "the State has a legitimate and indeed 'compelling' interest in preventing those aspects of solicitation that involve fraud, undue influence, intimidation, overreaching, and other forms of 'vexatious conduct' "). As such, it is sufficient to preclude characterizing the state as a nominal party without a real interest in the outcome of this lawsuit. In *Eure v. NVF Co.,* 481 F.Supp. 639 (E.D.N.C. 1979), for example, the court held that the state was a real party in interest in a suit by the North Carolina Secretary of State to compel compliance with the North Carolina Tender Offer Disclosure Act. Rejecting the defendants' argument that the state was merely a representative of the management of the target company, the court noted that the state had an independent interest in, *inter alia,* ensuring "aboveboard dealings in the purchase of stock." *Id.* at 642; *accord, Illinois ex rel. Scott v. Hunt International Resources Corp.,* 481 F.Supp. 71 (N.D.Ill. 1979) (State of Illinois held to be a real party in interest in a suit by its Attorney General to enjoin violations of the Illinois Consumer Fraud and Deceptive Practices Act and to obtain damages and restitution for consumers injured by those violations); *see also Glenmede Trust Co. v. Dow Chemical Co.,* 384 F.Supp. 423, 430–32 (E.D.Pa. 1974). *But see Louisiana ex rel. Guste v. Fedders Corp.,* 524 F.Supp. 552 (M.D.La. 1981) (State of Louisiana held to be a nominal party in a suit by the State's Attorney General to enjoin unfair trade practices and to obtain restitution for Louisiana consumers injured by those practices); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cavicchia,* 311 F.Supp. 149 (S.D.N.Y.1970) (New York held to be a nominal party for purposes of the Eleventh Amendment in a suit under the Martin Act, which "authorizes the Attorney General, when he believes that anyone has engaged in, or is about to engage in, any fraudulent practices involving securities, to 'bring an action in the name and on behalf of the people of the state of New York' " (emphasis omitted)).[6]

■ This conclusion is not altered by the State's decision to seek restitutionary relief and damages on behalf of those who allegedly have been defrauded by GM. Recovery of damages for aggrieved consumers

---

— U.S. ——, 102 S.Ct. 3509, 73 L.Ed.2d 1383 (1982).

Because of the State's quasi-sovereign interest in securing an honest marketplace, it would have *parens patriae* standing to bring this action even without the authority provided by New York Executive Law § 63(12). Indeed, GM recognizes that this is a *parens patriae* action. It does not, however, concede that the State has a real interest in the controversy. [GM's] Sur-Reply Memorandum of Law in Opposition to Plaintiff's Motion to Remand this Action to State Court at 3 ("the New York Attorney General has standing to sue as *parens patriae,* but is not a real party in interest"). Such a position is untenable. The *sine qua non* of *parens patriae* standing is the existence of a quasi-sovereign interest. Inherent in the conclusion that a state has standing to sue as *parens patriae* is the conclusion that the state has a quasi-sovereign interest in the controversy independent of the interests of individual citizens. *Connecticut v. Levi Strauss & Co.,* 471 F.Supp. 363, 370 (D.Conn.1979) (if a state sues as *parens patriae,* "its capacity would be essentially sovereign, and it would not be a citizen for diversity purposes").

**6.** GM argues that consideration of this motion should be guided by *Missouri, Kansas and Texas Ry. v. Missouri R. R. and Warehouse Commissioners,* 183 U.S. 53, 22 S.Ct. 18, 46 L.Ed. 78 (1901), a case in which the Supreme Court held that the State of Missouri was not a real party in interest in a suit by the Missouri Board of Railroad Commissioners to enforce various statutes relating to railroad rates. This Court disagrees. The primary issue in *Missouri Railway* was whether the Board of Railroad Commissioners could be considered the *alter ego* of the state; there was never any question as to whether the Board had a real interest in the controversy. *See Glenmede Trust Co. v. Dow Chemical Co., supra,* 384 F.Supp. at 431. In this case, GM concedes that the Attorney General is the *alter ego* of the State; the only question is whether the Attorney General, as *alter ego,* is a real party in interest. Even GM recognizes that the *alter ego* issue "should clearly be distinguished from the issue in the present case." [GM's] Memorandum of Law in Opposition to Plaintiff's Motion to Remand this Action to State Court at 10 n.*.

is but one aspect of the case. The focus is on obtaining wide-ranging injunctive relief designed to vindicate the State's quasi-sovereign interest in securing an honest marketplace for all consumers. That recovery on behalf of an identifiable group is also sought should not require this Court to ignore the primary purpose of the action and to characterize it as one brought solely for the benefit of a few private parties. *See Illinois ex rel. Scott v. Hunt International Resources Corp., supra.*[7]

This is, in all respects, the State's action. It is the State's quasi-sovereign interest that is being protected in this action. It is the State, not the purchasers of GM automobiles equipped with the THM 200, that controls this action. *See* 6 C. Wright & A. Miller, *supra,* § 1556, at 713 (to be "interested" for purposes of diversity, a party "at least must exercise some control over [the action]" (footnote omitted)). It is the State that will be bound by the results of this action. It is, therefore, logical to conclude that the State is not merely a nominal party. Accordingly, the State's motion to remand this case to the New York Supreme Court, New York County, is granted. The Clerk will enter the appropriate remand order.

SO ORDERED.

---

7. *But see Connecticut v. Levi Strauss & Co.,* 471 F.Supp. 363 (D.Conn.1979). In that case, the State of Connecticut alleged that Levi Strauss had violated state antitrust laws. It sought four types of damages: first, recovery, on behalf of Connecticut citizens who purchased Levi Strauss products, of "alleged unlawful overcharges incurred by [those purchasers];" second, recovery, for the state treasury, of "all provable overcharges that [could not] feasibly be returned to identifiable purchasers;" third, recovery of a civil penalty provided for by statute; and finally, recovery of attorney's fees. *Id.* at 370. To determine whether the state had an interest in the controversy for purposes of diversity, the court did not look to the nature of the suit as a whole; rather, it analyzed separately each type of award sought by the state. Thus, as to the second, third, and fourth types of damages, the court found that the state had a real interest in the controversy because it was acting in its sovereign capacity. *Id.* at 371. On the other hand, the court held that "[w]hen Connecticut claims refunds to be distributed to identifiable purchasers, the citizen status of the purchasers rather than the sovereign status of their benefactor controls for diversity purposes." *Id.* Diversity was lacking, however, because the amount in controversy requirement was not satisfied. *Id.; see* 28 U.S.C. § 1332(a) (1976).

If this Court followed the *Levi Strauss* analysis, the result would not be altered. The injunctive relief sought by the State is designed to vindicate its quasi-sovereign interest in securing an honest marketplace. Thus, the State would be a real party in interest and diversity would be lacking with respect to this aspect of the case. Moreover, although the State would be viewed as a nominal party with respect to the restitutionary relief sought on behalf of aggrieved consumers, diversity would be lacking because of failure to satisfy the $10,000 amount in controversy requirement. *See* Berman Affidavit ¶ 3 ("the average total expense incurred by an individual consumer in the repair of his or her THM 200 ... was $428.29").