# PENNSYLVANIA v. NEW JERSEY

No. 68, Orig. Argued December 3, 1975—Decided June 17, 1976*

---

*Together with No. 69, Orig., *Maine et al.* v. *New Hampshire,* also on motion for leave to file bill of complaint.

*Lawrence Silver,* Deputy Attorney General of Pennsylvania, argued the cause for plaintiff in No. 68, Original. With him on the brief were *Robert P. Kane,* Attorney General, and *Donald J. Murphy* and *Howard M. Levinson,* Deputy Attorneys General. *Joseph E. Brennan,* Attorney General of Maine, and *Benson D. Scotch,* Assistant Attorney General of Vermont, argued the cause for plaintiffs in No. 69, Original. With them on the brief were *Martin L. Wilk,* Deputy Attorney General of Maine, and *Donald G. Alexander,* Assistant Attorney General, *Francis X. Bellotti,* Attorney General of Massachusetts, and *James R. Adams,* Assistant Attorney General, and *M. Jerome Diamond,* Attorney General of Vermont.

*Stephen Skillman,* Assistant Attorney General of New Jersey, argued the cause for defendant in No. 68, Original. With him on the brief were *William F. Hyland,* Attorney General, and *Herbert Glickman,* Deputy Attorney General. *Charles G. Cleaveland,* Assistant Attorney General of New Hampshire, argued the cause for defendant in No. 69, Original. With him on the brief were *Warren B. Rudman,* Attorney General, and *Donald W. Stever, Jr.,* Assistant Attorney General.

PER CURIAM.

The motions for leave to file bills of complaint in these cases are denied.

The complaints, which seek to invoke our original jurisdiction, filed by Pennsylvania against New Jersey, and by Maine, Massachusetts, and Vermont against New Hampshire, rely on our decision last Term in *Austin*

v. *New Hampshire,* 420 U. S. 656 (1975), in which we held the New Hampshire Commuters Income Tax unconstitutional.

In *Austin, supra,* the Court held that the New Hampshire tax violated the Privileges and Immunities Clause of the Constitution. That law imposed a 4% tax on the New Hampshire-derived income of nonresidents. Although the law also imposed a tax on the income earned by New Hampshire residents outside the State, it then exempted such income from the tax if the income were either taxed or not taxed by the State from which it was derived. Since New Hampshire also did not tax the domestic income of its residents, the net effect of the Commuters Income Tax was to tax only the incomes of nonresidents working in New Hampshire.

The resident State of the plaintiff in *Austin* was Maine, and it provided a credit for income taxes paid to other States. Thus, New Hampshire's beggar-thy-neighbor tax rendered the total state tax liability of nonresidents unchanged, but diverted to New Hampshire tax revenues from the treasury of Maine. We held New Hampshire's taxing scheme unconstitutional since the tax "[fell] exclusively on the income of nonresidents . . . and [was] not offset even approximately by other taxes imposed upon residents alone." *Id.,* at 665 (footnote deleted).

In No. 68, Original, Pennsylvania contends that the New Jersey Transportation Benefits Tax Act, N. J. Stat. Ann. § 54:8A–58 *et seq.* (Supp. 1976–1977), is infirm under the Privileges and Immunities Clause as interpreted in *Austin, supra,* and the Equal Protection Clause of the Fourteenth Amendment. According to the complaint filed by Pennsylvania, the New Jersey tax fatally resembles the tax we held unconstitutional in *Austin.* Like New Hampshire, New Jersey does not tax the domestic income of its residents. Under the Transporta-

tion Benefits Tax Act, however, New Jersey does tax the New Jersey-derived income of nonresidents. And while that Act imposes an equivalent tax on the income of New Jersey residents earned outside the State, it exempts such income to the extent it is taxed by the State in which it is earned. Finally, like Maine in the *Austin* case, Pennsylvania permits a tax credit to any of its residents for income taxes paid to other States, including, of course, New Jersey. Pennsylvania, suing on behalf of itself and as *parens patriae* on behalf of its citizens, seeks declaratory and injunctive relief and, apparently, an accounting for the taxes that New Jersey's allegedly unconstitutional tax has diverted from the Pennsylvania treasury.

The plaintiffs in No, 69, Original, Maine, Massachusetts, and Vermont, explicitly premise their suit on the decision in *Austin, supra.* They seek on behalf of themselves an accounting for the taxes, alleged to amount to over $13.5 million, that New Hampshire's unconstitutional Commuters Income Tax diverted from their respective treasuries.

It has long been the rule that in order to engage this Court's original jurisdiction, a plaintiff State must first demonstrate that the injury for which it seeks redress was directly caused by the actions of another State. As Mr. Chief Justice Hughes noted on behalf of the Court in *Massachusetts* v. *Missouri,* 308 U. S. 1, 15 (1939): "To constitute such a [justiciable] controversy, it must appear that the complaining State has suffered a wrong through the action of the other State, furnishing ground for judicial redress . . . ."

In *Massachusetts* v. *Missouri, supra,* Massachusetts sought a declaration that only it could impose an inheritance tax on the estate of a Massachusetts domiciliary who had died with most of his assets located in

several revocable Missouri trusts. The assets located in Massachusetts were insufficient to pay that State's inheritance taxes. Missouri also claimed the exclusive right to impose its tax on the Missouri trusts. In language that is particularly appropriate for our disposition of these cases, the Court denied leave to file the complaint:

> "Missouri, in claiming a right to recover taxes from the . . . trustees, or in taking proceedings for collection, is not injuring Massachusetts. By the allegations, the property held in Missouri is amply sufficient to answer the claims of both States and recovery by either does not impair the exercise of any right the other may have. It is not shown that there is danger of the depletion of a fund or estate at the expense of the complainant's interest. It is not shown that the tax claims of the two States are mutually exclusive. On the contrary, the validity of each claim is wholly independent of that of the other . . . ." *Ibid.*

In neither of the suits at bar has the defendant State inflicted any injury upon the plaintiff States through the imposition of the taxes held, in No. 69, and alleged, in No. 68, to be unconstitutional. The injuries to the plaintiffs' fiscs were self-inflicted, resulting from decisions by their respective state legislatures. Nothing required Maine, Massachusetts, and Vermont to extend a tax credit to their residents for income taxes paid to New Hampshire, and nothing prevents Pennsylvania from withdrawing that credit for taxes paid to New Jersey. No State can be heard to complain about damage inflicted by its own hand.

Pennsylvania, in attempting to establish its entitlement to taxes collected by New Jersey from its residents, has alleged that the New Jersey Transportation Benefits

Tax Act violates both the Privileges and Immunities Clause and the Equal Protection Clause. Maine, Massachusetts, and Vermont claim that New Hampshire's withholding of taxes collected under its unconstitutional commuters tax violates the Privileges and Immunities Clause. The short answer to these contentions is that both Clauses protect people, not States.

What has been said disposes of the claims brought by the plaintiff States on their own behalf. In addition, however, Pennsylvania has filed a claim against New Jersey as *parens patriae* on behalf of its citizens.

The Court has recognized the legitimacy of *parens patriae* suits. See *Hawaii* v. *Standard Oil Co.*, 405 U. S. 251, 257–260 (1972); *Louisiana* v. *Texas*, 176 U. S. 1, 19 (1900). It has, however, become settled doctrine that a State has standing to sue only when its sovereign or quasi-sovereign interests are implicated and it is not merely litigating as a volunteer the personal claims of its citizens. Compare, *e. g., Oklahoma ex rel. Johnson* v. *Cook*, 304 U. S. 387 (1938); *Oklahoma* v. *Atchison, T. & S. F. R. Co.*, 220 U. S. 277 (1911); *Kansas* v. *United States*, 204 U. S. 331 (1907) (States may not invoke original jurisdiction of Supreme Court to prosecute purely personal claims of their citizens), with, *e. g., North Dakota* v. *Minnesota*, 263 U. S. 365 (1923); *Pennsylvania* v. *West Virginia*, 262 U. S. 553 (1923); *New York* v. *New Jersey*, 256 U. S. 296 (1921); *Georgia* v. *Tennessee Copper Co.*, 206 U. S. 230 (1907); *Kansas* v. *Colorado*, 206 U. S. 46 (1907) (original jurisdiction sustained for States protecting quasi-sovereign interests).

This rule is a salutary one. For if, by the simple expedient of bringing an action in the name of a State, this Court's original jurisdiction could be invoked to resolve what are, after all, suits to redress private grievances, our docket would be inundated. And, more important, the critical distinction, articulated in Art. III, § 2, of

the Constitution, between suits brought by "Citizens" and those brought by "States" would evaporate.

Pennsylvania's *parens patriae* suit against New Jersey represents nothing more than a collectivity of private suits against New Jersey for taxes withheld from private parties. No sovereign or quasi-sovereign interests of Pennsylvania are implicated. Accordingly, Pennsylvania's motion for leave to file suit as *parens patriae* on behalf of its citizens is also denied.

MR. JUSTICE BRENNAN and MR. JUSTICE WHITE dissent and would grant leave to file both bills of complaint.

MR. JUSTICE POWELL and MR. JUSTICE STEVENS took no part in the consideration or decision of these cases.

MR. JUSTICE BLACKMUN, concurring.

Obviously, and naturally, I join the Court's *per curiam* opinion. Last Term, in lonely dissent, in the case which has spawned the present motions by Pennsylvania and by Maine, Massachusetts, and Vermont, I said:

> "Because the New Hampshire income tax statutes operate in such a way that no New Hampshire resident is ultimately subjected to the State's income tax, the case at first glance appears to have some attraction. That attraction, however, is superficial and, upon careful analysis, promptly fades and disappears entirely. The reason these appellants, who are residents of Maine, not of New Hampshire, pay a New Hampshire tax is because the Maine Legislature—the appellants' own duly elected representatives—has given New Hampshire the option to divert this increment of tax (on a Maine resident's income earned in New Hampshire) from Maine to New Hampshire, and New Hampshire willingly has picked up that option. All that New Hampshire

has done is what Maine specifically permits and, indeed, invites it to do. If Maine should become disenchanted with its bestowed bounty, its legislature may change the Maine statute. The crux is the statute of Maine, not the statute of New Hampshire. The appellants, therefore, are really complaining about their own statute. It is ironic that the State of Maine, which allows the credit, has made an appearance in this case as an *amicus* urging, in effect, the denial of the credit by an adjudication of unconstitutionality of New Hampshire's statute. It seems to me that Maine should be here seeking to uphold its own legislatively devised plan or turn its attention to its own legislature." *Austin* v. *New Hampshire,* 420 U. S. 656, 668–669 (1975).

The Court in its *per curiam, ante,* at 664, now concedes that the "injuries to the plaintiffs' fiscs were self-inflicted" and that no State "can be heard to complain about damages inflicted by its own hand." *Quod approbo non reprobo.*