**Joan RYAN, et al., Plaintiffs,**

v.

**CARL CORPORATION,**
**et al., Defendants.**

**No. C 97–3873 FMS.**

United States District Court,
N.D. California.

Oct. 13, 1998.

John D. Shuff, Janette Skeels, Robins Kaplan Miller & Ciresi, LLP, San Francisco, CA, Daniel A. Reidy, Daniel A. Reidy Law Offices, San Francisco, CA, or Plaintiffs.

Michael Traynor, Kathryn M. Wheble, Cooley Godward LLP, San Francisco, CA, Aimee Jorgensen, Silicon Valley Law Group, San Jose, CA, for Defendants.

ORDER GRANTING SUMMARY
ADJUDICATION

FERN M. SMITH, District Judge.

## INTRODUCTION

Plaintiffs' motion for summary adjudication requires the Court (1) to decide whether plaintiffs have standing; (2) to determine whether partial summary judgment on the substantive issue should be delayed pending additional discovery; and (3) to construe section 201(c) of the Copyright Act. The Court finds that plaintiffs have standing, sees no reason to delay this decision, and construes section 201(c) in the manner proposed by plaintiffs.

## BACKGROUND

The four plaintiffs in this case—Jim Tunney, Arlie Russel Hochshield, Lyn Hejinian, and Ronald Silliman—are authors of articles that were published in magazines and scholarly journals. Each of the articles was copied and delivered. to a third party by defendant UnCover, a document retrieval and delivery business. UnCover paid copyright fees to the publishers of the collected works, but not to plaintiffs. Plaintiffs claim that their copyrights in the individual articles were thereby violated.

Defendant UnCover, a partnership owned by defendants CARL Corporation and Dialog Corporation (collectively "UnCover"), is a for-profit company that functions like a private interlibrary loan service. UnCover maintains an internet database that contains the titles, but not the text, of about eight million articles from about seventeen thousand periodicals. UnCover's customers, mostly libraries and some individuals, can search the database by title, author, periodical title, and subject. When a customer requests an article, an UnCover representative goes to a library that carries the periodical, copies the article, and sends it to the customer. The fee charged depends on how quickly the customer needs the article.

After the article is sent, UnCover sends a copyright payment either to the publisher of the periodical or to a copyright payment clearinghouse, if the publisher belongs to one. The first time an article by a particular publisher is requested, UnCover copies the article without prior permission. UnCover then sends a letter and a check to the publisher, requesting permission to copy other articles in the future. If the publisher explicitly grants permission or deposits the check without response, UnCover continues to copy articles by that publisher upon request. If the publisher refuses permission, UnCover "blocks" articles by that publisher; although the titles of the articles continue to appear in the database, UnCover does not copy or deliver the full articles. UnCover does not contact or send any payment to the authors of the articles. Its letters requesting copying permission from the publishers make no mention of the copyrights of authors.

All of the plaintiffs in this case published in periodicals excerpts from books they had written: an excerpt of plaintiffs Hejinian and Silliman's book "Leningrad: American Writers in the Soviet Union" was published in the "Socialist Review," a selection of excerpts from plaintiff Tunney's memoir "Impartial Judgment" was published in "Referee," and plaintiff Hochshield's article "Time in the Balance," adapted from her book "The Time Bind: When Work Becomes Home and Home Becomes Work," was published in "The Nation." Before the lawsuit was filed, representatives of the plaintiffs ordered these articles from UnCover. UnCover delivered the articles according to its usual practice, without asking permission of the authors or paying them copyright fees.

Plaintiffs filed this class action lawsuit on October 22, 1997. UnCover immediately attempted to block plaintiffs' articles from further delivery. Nevertheless, on October 29, 1997, November 12, 1997, and March 19, 1998, plaintiffs again successfully ordered their articles. UnCover contends that plaintiffs managed to do this only by exploiting a loophole in the software and by disregarding warnings that the article was blocked; UnCover claims to have subsequently closed the loophole.[1]

---

1. Uncover's response on this point is contained in a supplemental declaration that it has applied ex parte to file.

Plaintiffs, who have not yet filed a motion for class certification, filed a motion for a preliminary injunction on January 9, 1998. The Court denied the motion from the bench on April 10, 1998, finding that plaintiffs had not shown irreparable harm or likely success on the merits. On June 15, 1998, the Court granted defendants motion to dismiss plaintiff Joan Ryan, on the ground that the Copyright Act bars suits by plaintiffs whose copyright applications have not been granted at the time the suit is filed. Plaintiffs now bring a motion for partial summary judgment, asking that the Court construe section 201(c) of the Copyright Act, and strike defendants' second affirmative defense, a defense that turns in part on the construction of that section.

## DISCUSSION

### I. Legal Standard

To withstand a motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue of material fact in dispute. *See* Fed. R.Civ.P. 56(e). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In opposing summary judgment, plaintiff is not entitled to rely on the allegations of his complaint. He "must produce at least some 'significant probative evidence tending to support the complaint.'" *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The Court does not make credibility determinations with respect to evidence offered, and is required to draw all inferences in the light most favorable to the non-moving party. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630–31

(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts. . . ." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir.1980).

### II. Analysis

#### A. Standing

▮ Defendants argue that plaintiffs lack standing because their articles were copied at their own request. Even if the named plaintiffs do lack standing, the Court has the discretion to construe section 201(c). Where named plaintiffs in a class action lack standing, the Court may allow the action to proceed if the putative class members may have standing. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 398–400, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). Given that UnCover delivers 1,000 articles a day and pays no royalties to authors, many putative class members will have standing. Whether or not the Court should choose to proceed is a more difficult question. Defendants urge restraint in construing section 201(c) until a class has been certified, because if no class is certified, a ruling on 201(c) may be unnecessary; however, plaintiffs will likely be able to name at least some plaintiffs who have standing and who have not authorized further reproduction. The Court therefore properly construes section 201(c).

▮ Defendants first argue that there has been no "actual" injury because the only copies that have been made of the plaintiffs' articles were made at the request of plaintiffs. Defendants cite a Supreme Court case that held that "No State can be heard to complain about damage inflicted by its own hand." *Pennsylvania v. New Jersey*, 426 U.S. 660, 664, 96 S.Ct. 2333, 49 L.Ed.2d 124 (1976). The Supreme Court's holding, however, was not based on a standing analysis but instead sprang from the rule that "to engage [the Supreme Court's] original jurisdiction, a plaintiff State must first demonstrate that the injury for which it seeks redress was directly caused by the actions of

another State." *Id.* at 663, 96 S.Ct. 2333. It is not clear whether that rule applies to suits between private parties. Even assuming that it does, defendants' argument is unpersuasive. Although plaintiffs requested the copying, their alleged injury is that UnCover failed to pay them royalties. Plaintiffs may have set events in motion, but UnCover had a hand in inflicting that injury.

Defendants also assert that there was no injury because when plaintiffs requested the copies, they authorized defendants to reproduce the articles. This precise argument has been rejected by the Eighth Circuit in the copyright infringement case *Olan Mills v. Linn Photo Co.*, 23 F.3d 1345 (8th Cir.1994). The plaintiff photo studio in that case had hired an investigator, who asked the defendant to reproduce several copyrighted photos of plaintiff. When the plaintiff sued the defendant for infringement, the defendant argued that the plaintiff had authorized the reproduction. The Eighth Circuit disagreed, holding that "Olan Mills did not authorize the investigator to validate Linn Photo's unlawful conduct. Indeed, the investigator's assignment was part of Olan Mills' attempt to stop Linn Photo's infringement." *Id.* at 1348. The Court agrees with the Eighth Circuit's analysis, and holds that plaintiffs did not authorize defendants' conduct. Plaintiffs therefore have standing to bring this suit.

## B. Delay Pending Discovery

Defendants argue that even if the Court is inclined to construe section 201(c) in favor of plaintiffs, it should not strike defendants' second affirmative defense until further discovery has been conducted. This is correct. Defendants' second affirmative defense reads, "defendants allege that UnCover acted under explicit or implied licenses with entities who had actual or apparent authority to grant such licenses." A ruling on the 201(c) issue in favor of plaintiffs would only establish that plaintiffs held the right to reproduce the articles unless they had contracted otherwise. Further discovery would be needed to

determine whether plaintiffs had transferred licenses to publishers, who then lawfully transferred them to defendants. Nor is there any merit to the argument that additional evidence will aid the Court in construing section 201(c).

## C. Meaning of Section 201(c)

The creator of a collected work holds a copyright distinct from that of the individual works contained in the compilation. *See* 17 U.S.C. 103(b). Unless the parties have contracted otherwise, "the owner of copyright in the collective work is presumed to have acquired only the privilege of reproducing and distributing the contribution as part of that particular collective work, any revision of that collective work, and any later collective work in the same series." 17 U.S.C. § 201(c).

The dispute in this case turns on the meaning of the words "as part."[2] Under plaintiffs' construction, the reproduction must appear either in the original collective work, in a revised collective work, or a later collective work in the same series. Because defendants photocopy only individual articles, plaintiffs allege they are not reproducing them "as part" of collective works. Under defendants' reading, publishers may "reproduce the original work (the 'part') as it appears in the collective work, even if the entire work is not reproduced." (Defs.' Mem. in Opp. to Pls.' Mot. for Summ.Adjud. at 6.)

Although rational arguments can be made for each interpretation, plaintiffs' reading of the statute better accounts for what appears to be the intent of section 201(c): namely, a predictable and equitable distribution of rights between author and publisher. The privilege of reproducing the contribution "as part of that particular collected work" plainly permits a publisher to include the contribution "in" the collected work; otherwise, collected works would be impossible. Likewise, there can be no dispute that contributions

---

**2.** There are two possible ways to parse this sentence grammatically. Defendants' suggest that it be parsed so that "as part" is included only in the first clause of the sentence: ". . . reproducing and distributing (1) the contribution as part of that articular work; (2) any revision of that collective work; and (3) any later collective work in lective work; and (3) any later collective work in the same series." The Court adopts the more natural parsing, in which "as part" serves as part of each of the three clauses: ". . . reproducing and distributing the contribution as part of (1) that particular work; (2) any revision of that collective work; and (3) any later collective work in the same series."

may be reproduced "in" revised collected works and "in" later collected works in the same series. *See* Notes of the Committee on the Judiciary, House Report No. 94–1476 ("Under the language of this clause a publishing company could reprint a contribution from one issue in a later issue of its magazine, and could reprint an article from a 1980 edition of an encyclopedia in a 1990 revision of it ...."). Defendants' construction would grant publishers additional rights that reach beyond that narrow construct.

Both the language and the legislative history of section 201(c) suggest that when in doubt, courts should construe the rights of publishers narrowly rather than broadly in relation to those of authors. The statute expressly states that the holder of the copyright in the collective work is presumed "only" the enumerated rights. The legislative history explains the reason for the inclusion of that term. Section 201(c) was enacted, as part of the Copyright Act of 1976, in response to the doctrine of copyright indivisibility. "Under this former regime, individual authors were at risk of inadvertently surrendering all rights in a contribution to a collective work either to the publisher of that work or to the public." *Tasini v. New York Times Co.*, 972 F.Supp. 804, 815 (S.D.N.Y.1997), *reconsid. denied*, 981 F.Supp. 841 (S.D.N.Y. 1997). When determining the respective rights of publishers and authors under section 201(c), one must bear in mind that Congress passed the section to enlarge the rights of authors.

The very limited case law on this issue does not compel a different conclusion. The only case relied upon by defendants, *Tasini*, is instructive but not determinative. In *Tasini*, authors sought compensation for the inclusion in electronic databases of their contributions to collected works. The court, relying on the "revision" privilege of section 201(c), determined that the publishers had the right to include the entire collected works in the databases without obtaining permission from or compensating the authors. In finding that the conversion to an electronic format was a permissible revision, the court emphasized that the publishers' selection of the articles remained, even if particular arrangement and formatting was lost. *Id.* at 824–26. No reasonable argument can be made that defendants in this case are "revising" their collected works when they photocopy individual articles. It is true that the layout, images, and any other arrangement value added by the publisher is retained. Calling the reproduction of a single article a "revision" of a collected work, however, is more strained than even a flexible interpretation can withstand. *See also Tasini* at 819 (noting that statute distinguishes between "reproduction" and "revision").

There are, however, remaining problems with construing the statute as plaintiffs suggest. Plaintiffs reach too far when they argue that defendants' reading would allow publishers to do virtually anything with individual articles. For example, defendants concede that a publisher could not sell an article for publication in another journal. *See Tasini*, 972 F.Supp. at 826. Doing so would be unlike photocopying because only the actual content of the article, which belongs to the author, would be sold. Likewise, the reworking of an article into a book or movie, which is forbidden, *see id.*, does not make use of the formatting or pagination of the article in the compilation.

Under plaintiffs' reading of the statute, moreover, the only thing made clear is that the publishers of a collected work do not have the right to reproduce individual contributions. But who does? The natural conclusion is that the right of reproduction must belong to the authors. Such a decision, although perhaps more in line with the purposes of section 201(c), is not much more equitable. In many cases, the value added by the publisher to a reproduced article is significant. Where the collected work is a peer-reviewed academic journal, the article gains intellectual credibility from having been selected and approved by the publisher. To be useful to future researchers, the article must be cited according to its location in the publisher's journal. In some magazines, the publisher's addition of illustrations adds substantially to the value of the article.

From the standpoint of societal efficiency, it makes more sense to allocate the right of reproduction to publishers, because publishers are easier to locate. Defendants are

correct that academic use of articles will be made more difficult by the adoption of plaintiffs' construction, which will require obtaining permission from both the publisher and the author. The Court, however, is not free to construe statutes in the manner most efficient. Instead, it must follow the intent of Congress as expressed in the terms of the statute. In this case, that compels adoption of plaintiffs' construction of section 201(c).

### D. Transferability of the license

Plaintiffs argue that even if the publishers hold the right to reproduce the articles, they could not authorize defendants to do so, because the "privilege" created by section 201(c) is merely a non-transferrable exemption from liability. Because the Court construes section 201(c) in plaintiffs' favor, it need not reach this argument. This precise argument, moreover, was considered and persuasively rejected by the *Tasini* court. *Id.* at 815–16.

### CONCLUSION

The Court GRANTS plaintiffs' partial motion for summary adjudication as to the construction of 201(c) but declines to strike defendants' second affirmative defense.

SO ORDERED.