Revised March 4, 2003

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-60048

_____


UNITED STATES OF AMERICA

                              Plaintiff - Appellant

        v.

MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY

                              Defendant - Appellee

_____

Appeal from the United States District Court
for the Southern District of Mississippi
_____

February 5, 2003

Before KING, Chief Judge, and JOLLY and HIGGINBOTHAM, Circuit
Judges.

KING, Chief Judge:

     Plaintiff-Appellant United States of America appeals the
order entered by the District Court for the Southern District of
Mississippi dismissing the United States' civil action against
Defendant-Appellee Mississippi Department of Public Safety for
alleged violations of the Americans with Disabilities Act on the
grounds that the suit was barred by the Eleventh Amendment.  We

reverse the district court's decision and remand for further proceedings.

I.        FACTS AND PROCEDURAL BACKGROUND

On May 17, 2000, the United States filed suit alleging that the Mississippi Department of Public Safety ("MDPS" or "the Department") had violated the Americans with Disabilities Act ("ADA") by dismissing Ronnie Collins from the training academy of the Mississippi Highway Safety Patrol on account of his disability.[1]  Specifically, the United States alleged that the MDPS admitted Collins to the training academy and then dismissed him because of his disability even though he would have been able to perform the essential functions of the job if the MDPS had been willing to make reasonable accommodations for his disability.  The United States sought an injunction prohibiting the MDPS from engaging in unlawful employment practices against individuals with disabilities and monetary damages and other compensatory relief for the losses personally suffered by Collins, including an offer of a position as a law enforcement officer with retroactive seniority, back pay, and pension and other employment benefits.

The MDPS moved to dismiss the suit pursuant to FED. R. CIV. P. 12(b)(6), arguing (among other things) that the Eleventh Amendment barred the suit.  On September 14, 2001, the district

---

[1]    Mr. Collins suffers from Type II diabetes.

court granted the Department's motion to dismiss, finding that the United States' claims against the MDPS for monetary damages and injunctive relief were barred by the Eleventh Amendment. The district court characterized the United States' action as essentially an action "on behalf of Ronnie Collins." United States v. Miss. Dept. of Pub. Safety, 159 F. Supp. 2d 374, 376 (S.D. Miss. 2001). The court acknowledged that the ADA "'can be enforced by the United States in actions for money damages.'" Id. at 377 (quoting Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 374 n.9 (2001)). However, according to the court, the United States may do so only by bringing an action to remedy a "pattern" of intentional discrimination pursuant to Section 707 of the Civil Rights Act, 42 U.S.C. § 2000e-6(a) (2000). Where, as here, the United States brings an action pursuant to Section 706 of the Civil Rights Act, 42 U.S.C. § 2000e-5(f) (2000), to remedy an individual instance of discrimination, the court viewed the action as merely "stepp[ing] into the shoes of a private individual."[2] Id. at 377. "In this capacity, the United States has no more power to sue a state than the individual it represents." Id. Accordingly, the court dismissed the United States' claims for monetary damages and other compensatory relief as barred by the Eleventh Amendment; it also dismissed the

---

[2] The ADA expressly adopts the power, remedies, and procedures set forth in the Civil Rights Act of 1964 for enforcement of its statutory mandates. 42 U.S.C. § 12117(a) (2000).

request for injunctive relief on the grounds that it was brought against the MDPS itself rather than against a public official as required by Ex parte Young, 209 U.S. 123 (1908).  Id. at 378.

The United States appeals this decision, arguing that the district court misapplied clearly established Eleventh Amendment precedent.  The MDPS replies that dismissal on sovereign immunity grounds was appropriate; alternatively, the MDPS argues that the ADA, as applied to the states, is an unconstitutional exercise of Congressional power.

II.      WHETHER THE MDPS IS ENTITLED TO ELEVENTH AMENDMENT
         IMMUNITY ON THESE CLAIMS

This court reviews de novo a district court order dismissing a case for failure to state a claim upon which relief could be granted.  Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982).

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  While the Eleventh Amendment bars suits by individuals against a state, the Supreme Court has long recognized that, "[i]n ratifying the Constitution, the States consented to suits brought by other States or by the Federal Government."  Alden v. Maine, 527 U.S. 706, 755-56 (1999) (citing Principality of Monaco v. Mississippi, 292 U.S. 313, 329

4

(1934)).  Accordingly, "States retain no sovereign immunity as against the Federal Government."  West Virginia v. United States, 479 U.S. 305, 312 n.4 (1987).  Recently, in cases invalidating Congressional attempts to abrogate States' sovereign immunity from suit by private individuals, the Court has repeatedly reaffirmed this principle.  See Garrett, 531 U.S. at 374 n.9 (noting that the Court's holding that "Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages" under the ADA had no impact on the ability of the United States to enforce the ADA in suits for money damages); Alden, 527 U.S. at 755-56 (remarking how a "suit which is commenced and prosecuted against a State in the name of the United States . . . differs in kind from the suit of an individual"); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 71 n.14 (1996) (noting that "[t]he Federal Government can bring suit in federal court against a State" as a method of "ensuring the States' compliance with federal law").

In spite of these statements, the MDPS argues that it is an open question whether sovereign immunity should be recognized to protect states from cases, like this one, in which the federal government seeks to circumvent the safeguards of the Eleventh Amendment and obtain personal relief for private individuals.  In support of this argument, the MDPS relies on a host of cases which have held that a state or federal government, when acting merely as an agent for one or more citizens rather than as the

5

real party in interest, may not invoke the original jurisdiction of the Supreme Court.  See, e.g., Kansas v. Colorado, 533 U.S. 1 (2001); Pennsylvania v. New Jersey, 426 U.S. 660 (1976); United States v. Minnesota, 270 U.S. 181, 192 (1924) (affirming the authority of the United States to bring the suit in question but conceding that, "if the Indians [were] the real parties in interest and the United States only a nominal party, the suit [would not be] within this court's original jurisdiction").

However, none of these cases supports the proposition that the doctrine of sovereign immunity protects a state entity from suit in federal court by the federal government to enforce federal law.  The Constitution specifically gives the executive branch the power to "take Care that the Laws be faithfully executed."  U.S. CONST. art. II, § 3.  Therefore, the federal government always has a real and substantial federal interest in ensuring the states' compliance with federal law.

Furthermore, the Supreme Court has specifically held that, in the context of the ADA, the federal government has the responsibility to determine when it is in the public interest to sue to vindicate federal law via victim-specific relief.  EEOC v. Waffle House, 534 U.S. 754 (2002):

> The [ADA as enforced by Section 706 of the Civil Rights Act] clearly makes the [federal government] the master of its own case and confers on the agency the authority to evaluate the strength of the public interest at stake. Absent textual support for a contrary view, it is the public agency's province–not that of the court–to determine whether public resources should be committed to

> the recovery of victim-specific relief. And if the
> agency makes that determination, the statutory text
> unambiguously authorizes it to proceed in a judicial
> forum.

Id. at 763. The fact that Collins could not sue the MDPS for the alleged violation of the law in no way diminishes the United States' interest in the action or the authority of the United States to bring suit against the MDPS for the benefit of the public generally and for Collins' benefit specifically. Nor does it transform the United States into a mere proxy for Collins. Collins has no right to compel the United States to bring suit or to dictate its complaint or prayer for relief in any way. See Arizona v. California, 460 U.S. 605, 613-14 (1983). In short, the United States' interest in and control over this case is entirely real.

The United States is not barred by the Eleventh Amendment from suing a state to enforce federal law and obtain the relief authorized by the ADA. The district court erred in granting the Department's motion to dismiss based on Eleventh Amendment immunity.[3]

III.     WHETHER THE ADA AS APPLIED TO THE STATES IS AN
         UNCONSTITUTIONAL EXERCISE OF CONGRESSIONAL POWER

---

[3]     The Sixth and Seventh Circuits have rejected nearly identical sovereign immunity challenges to suits brought by the EEOC pursuant to the Age Discrimination in Employment Act ("ADEA"). EEOC v. Bd. of Regents of the Univ. of Wisc., 288 F.3d 296 (7th Cir. 2002); EEOC v. Ky. Ret. Sys., 16 Fed. Appx. 443 (6th Cir. 2001) (unpublished op.).

7

As we have held that the Eleventh Amendment does not bar this suit, we will address the Department's alternative argument: that, as applied to the states, the ADA is an unconstitutional exercise of Congressional authority. MDPS argues that Congress, in enacting the ADA, relied exclusively on Section 5 of the Fourteenth Amendment to apply the ADA to the states; as such, the ADA as applied to the states is an unconstitutional exercise of Congressional power.

This argument is flatly contradicted by the statutory language of the ADA. One of the express purposes of the ADA is "to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. § 12101(b)(4) (2000) (emphasis added). Thus, Congress' intent in enacting the ADA was to use both the Fourteenth Amendment and the Commerce Clause to remedy discrimination. The simple fact that the ADA applies to the states and aims to eliminate discrimination does not mean that the ADA can apply to the states only through an exercise of federal power under the Fourteenth Amendment. Cf. EEOC v. Wyoming, 460 U.S. 226 (1983) (upholding extension of the ADEA to the States as a valid exercise of Congressional power under the Commerce Clause); Katzenbach v. McClung, 379 U.S. 294 (1964) (finding public accommodations portion of Civil Rights Act of 1964 to be valid exercise of

8

commerce power).  Furthermore, the Supreme Court has repeatedly upheld federal regulation of the national labor market as a valid exercise of the commerce power.  See, e.g., EEOC v. Wyoming, 460 U.S. at 243 (upholding the ADEA); United States v. Darby, 312 U.S. 100, 117-18 (1941) (upholding the Fair Labor Standards Act).

Of course, to say that the ADA is an exercise of Commerce Clause power does not mean that it is necessarily a constitutional exercise of that power.  While there is a "time-honored presumption that [a statute] is a 'constitutional exercise of legislative power,'" Reno v. Condon, 528 U.S. 141, 148 (2000) (quoting Close v. Glenwood Cemetery, 107 U.S. 466, 475 (1883)), the Supreme Court has recently invalidated several attempts by Congress to regulate, through its Commerce Clause power, activities that did not truly have an effect on interstate commerce.  See, e.g., United States v. Morrison, 529 U.S. 598 (2000) (invalidating the Violence Against Women Act); United States v. Lopez, 514 U.S. 549 (1995) (invalidating the Gun-Free School Zones Act).  The MDPS argues that its decisions regarding hiring and firing in the training academy for the Mississippi Highway Safety Patrol are purely local and, particularly in light of this recent shift in Supreme Court jurisprudence, do not have the kind of substantial impact on interstate commerce that would

9

render them subject to attack under a statute grounded in the commerce power.[4]

However, the Supreme Court has recognized that effects on employment affect commerce.  See Morrison, 529 U.S. at 615 (reasoning that Congress could "regulate any crime as long as the nationwide, aggregated impact of that crime has substantial effects on employment, production, transit, or consumption") (emphasis added).  The United States presents compelling evidence supporting the proposition that there is a national labor market and that even local acts of discrimination, when considered in the aggregate, can have a substantial effect on that market.  Thus, even if the personnel decisions made in the training academy are largely local, aggregating their effect with the effect of potential decisions in job training programs around the country provides a sufficient basis for Congress to regulate the activity under the Commerce Clause.

Furthermore, the legislative history of the ADA provides the type of findings that the Lopez Court said would support an exercise of the commerce power.  See Lopez, 514 U.S. at 562-63:

---

[4]    The MDPS also argues that the ADA should not apply here because there was no employer-employee relationship between the MDPS and Collins (who was only a trainee in its academy). However, the plain language of the statute demonstrates that the ADA covers not only traditional employment activities but also such things as "job training" – which is precisely what Collins was attending the academy to receive.  42 U.S.C. § 12112(a) (2000).

> Congress normally is not required to make formal findings as to the substantial burdens that an activity has on interstate commerce. But to the extent that congressional findings would enable us to evaluate the legislative judgment that the activity in question substantially affected interstate commerce, even though no such substantial effect was visible to the naked eye, they are lacking here.

Id. Congress found that "some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older." 42 U.S.C. § 12101(a)(1) (2000). Discrimination against people with disabilities "costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity." Id. § 12101(a)(9). A Senate committee heard testimony that "the availability of an increased work force and the greater productivity that can ensue from our economy as a whole through opening up these kinds of opportunity [to people with disabilities], provides reason in and of itself to pursue this."). Americans with Disabilities Act of 1989: Hearings on S. 933 Before the Senate Comm. on Labor and Human Resources and the Subcomm. on the Handicapped, 101st Cong., 1st Sess. 208-09 (1989) (statement of Attorney General Thornburgh). Legislators also heard testimony that ending workplace disability discrimination would lead to both increased earnings and increased consumer spending. Id. at 209. These findings ably demonstrate that Congress realized the effect that disability discrimination was

11

having (and would continue to have) on interstate commerce in the absence of the ADA.

Congress rationally concluded that regulation of employment discrimination was necessary to regulate the national market of employment. It is not necessary to "pile inference upon inference" to see the effect of such discrimination on interstate commerce. Lopez, 514 U.S. at 567. Unlike the statutes at issue in Morrison and Lopez, the ADA's regulation of employment is a permissible exercise of Congress' powers under the Commerce Clause.

IV.     CONCLUSION

The district court erred in granting the Department's motion to dismiss for failure to state a claim upon which relief could be granted. We REVERSE the district court's decision and REMAND for further proceedings. Costs shall be borne by MDPS.

12