*369 AMBRO, Circuit Judge,
dissenting.
Were the law on standing a blank slate, perhaps the plaintiffs[1] here would have standing. It is not, and they do not. Instead, precedent establishes clear and exacting standards for when fear of a possible harm generates standing. Because the plaintiffs have not met those standards, I respectfully dissent.
As the Supreme Court stated more than four decades ago, “Allegations of a subjective ‘chill’ are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm....” Laird v. Tatum, 408 U.S. 1, 13-14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). Here, the plaintiffs have specifically and with supporting declarations alleged that they and their members subjectively fear the future imposition of costs. Contrary to the majority’s position, our task is to determine whether that subjective fear has a sufficient objective basis to render it an injury sufficient to confer standing to sue today.
Clapper v. Amnesty International USA, — U.S. -, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013), is particularly instructive in conducting this evaluation. There a variety of lawyers and activist groups brought a constitutional challenge to expanded surveillance under an amended portion of the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1881a, that they feared might intercept their communications given their work with targeted groups. Id. at 1145. The Second Circuit, reversing the District Court, found standing based on both what the plaintiffs termed an “objectively reasonable likelihood” of future interception and the actions of the plaintiffs based on fear of that interception. Id. at 1146.
The Supreme Court reversed the Circuit Court, ruling that the plaintiffs did not have standing. The threat of future surveillance was too speculative to create standing because it “relie[d] on a highly attenuated chain of possibilities....” Id. at 1148. As to the applicable test, “the Second Circuit’s ‘objectively reasonable likelihood’ standard is inconsistent with our requirement that ‘threatened injury must be certainly impending to constitute injury in fact.’ ” Id. at 1147 (emphasis added) (quoting Whitmore v. Arkansas, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)). Instead, that “Circuit’s analysis improperly allowed respondents to establish standing by asserting that they suffer present costs and burdens that are based on a fear of surveillance, so long as that fear is not ‘fanciful, paranoid, or otherwise unreasonable.’ ” Id. at 1151 (quoting Amnesty Int’l USA v. Clapper, 638 F.3d 118, 134 (2d Cir.2011)).
My majority colleagues make the same error, implicitly allowing the plaintiffs to establish standing without showing a sufficiently certain harm. Their opinion states: “The threat of cost shifting, entirely believable in light of recent history, chills the Aspiring Parties’ electioneering activities.” Maj. Op. at 364 (emphasis added). I do not doubt that the threat of cost shifting is “entirely believable,” id., nor, for the sake of argument, do I doubt that the plaintiffs in good faith believe costs would be assessed if the plaintiff organizations were to *370 run candidates. Yet this fear alone is simply not enough to create standing.
Instead, to generate standing, cost assessments must be “certainly impending.” They are not in at least three ways. First, assuming that a candidate were to collect and submit the necessary signatures (something the candidate is responsible for), someone would have to challenge his or her nomination papers. Even if it is true that “[t]he likelihood of future legal challenges is hardly farfetched,” Maj. Op. at 360 n. 15, a “hardly farfetched” threat is not enough. The complaint alleges that in recent years some non-major party candidates have been challenged while others have not been challenged (in particular, the Libertarian Party nominees in 2008). That some but not all recent candidates have been challenged does not support the inference that any particular nomination will inevitably be challenged in the future.
Second, if a nomination were challenged, the candidate would have to lose before costs could be imposed — ie., his or her nomination papers would have to be disqualified. Based on the complaint and supporting declarations, there is no basis for concluding that successful defenses against challenges are impossible or even improbable, particularly when (as the plaintiffs repeatedly assert) a candidate believes in good faith that he or she submitted sufficient valid signatures. The mere fact of a challenge does not make disqualification a fait accompli
Third, even if a challenge is successful, costs can be imposed under In re Farnese, 609 Pa. 543, 17 A.3d 357 (2011), only if a court deems such an assessment “just” after considering “the particular facts, the nature of the litigation, and other considerations as may appear relevant.” Id. at 372. A cost assessment is not automatic or inevitable after a challenge is lost, but rather is the subject of a case-specific balancing process by a neutral state court. Although Clapper requires certainty, the majority inexplicably writes that it is post-Famese cost assessments’ “alleged uncertainty itself that leads to the Aspiring Parties’ injury.” Maj. Op. at 363 n. 19 (emphasis added). Yet, as the majority notes, the provision allowing cost assessments has been law for over 75 years and the signature threshold has been unchanged for over 40 years. See id. at 353 (citing People’s Party v. Tucker, 347 F.Supp. 1, 2 & n. 2 (M.D.Pa.1972)). In all that time, the plaintiffs have identified just two instances in which a Pennsylvania court has assessed costs against a non-major party candidate under this provision, each involving particular facts that cause courts to “send a message” by way of a sanction. The first major cost award involved widescale fraud, while the second involved repeated failure to comply with court orders. These two cases, particularly in light of Famese, do not support the conclusion that a candidate who is challenged and loses will inevitably be assessed costs. What we have instead is, like Clapper, a “highly attenuated chain of possibilities [that] does not satisfy the requirement that threatened injury must be certainly impending.” Clapper, 133 S.Ct. at 1148.
Nor can the plaintiffs create standing by acting on their subjective fear. Their filings are filled with language suggesting coercion, saying that would-be candidates have been “forced” or “compelled” to withdraw or not to run and referring to “threats” to seek costs by people associated with major parties. The Clapper plaintiffs made analogous claims, such as “that the threat of surveillance sometimes compels them to avoid certain e-mail and phone conversations, to ‘tal[k] in generalities rather than specifics,’ or to travel so that they can have in-person conversations.” Id. at 1151 (alterations in original) (citations omitted). The Supreme Court *371 roundly rejected those contentions, writing that “respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.” Id. The same applies here: actions the plaintiffs or their “member-supporters” have taken or not taken out of fear of cost assessments do not create standing for the same reason that fear itself does not.
In response, my majority colleagues argue without citation that “[i]t is enough that there is a reasonable evidentiary basis to conclude that the [plaintiffs’] electioneering activity will be limited by Pennsylvania’s electoral scheme.” Maj. Op. at 364 n. 21. In their view, so long as there is a “credible threat,” id., of some negative consequence for the exercise of one’s First Amendment right, a plaintiff can show standing by specifically alleging that he or she will not exercise the right out of subjective fear that consequence could occur. This is not the law, and the majority’s purported bases for distinguishing Clapper, which amount to the conclusion that our case does not involve identical facts, are unavailing. Thus I turn to what Clapper teaches.[2]
I know no basis for concluding that Clapper’s reach is limited to national security cases beyond the vague half-sentence quoted by the majority. Clapper relies, with the exception of Laird, overwhelmingly on standing cases from outside the national security context. For the central proposition that a threatened harm must be certainly impending, the Court relied on Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), and a case where one death row inmate attempted to assert standing on behalf of another death row inmate, Whitmore v. Arkansas, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). See Clapper, 133 S.Ct. at 1147 (citing Lujan, 504 U.S. at 565 n. 2,112 S.Ct. 2130); id. (citing Whitmore, 495 U.S. at 158, 110 S.Ct. 1717). To conclude that costs incurred out of fear of a non-certain harm do not generate standing, the Court in Clapper looked to Pennsylvania v. New Jersey, 426 U.S. 660, 96 S.Ct. 2333, 49 L.Ed.2d 124 (1976), a tax dispute among several states, and National Family Planning & Reproductive Health Association, Inc. v. Gonzales, 468 F.3d 826 (D.C.Cir.2006), a challenge to grant restrictions on family planning services. See Clapper, 133 S.Ct. at 1151. This range of sources strongly suggests that the Court meant for us to apply Clapper to standing decisions well beyond the narrow national security context.
Moreover, in Clapper’s “detailed review of the particular statutory scheme at issue,” Maj. Op. at 364 n. 21, the Court did not reach its conclusion based on some isolated, idiosyncratic feature of the FISA *372 amendments. It reviewed the statute to determine whether it made the purported harm certainly impending and concluded it did not. See 133 S.Ct. at 1148-50. A thorough review of the statutory scheme here reveals similar uncertainty and thus, I believe, leads to the same conclusion.
The majority also argues that Clapper does not apply because the plaintiffs there alleged that their First Amendment rights were burdened by possible surveillance of their contacts, see id. at 1148, while the plaintiffs here fear costs that might be assessed against them and their candidates directly. See Maj. Op. at 364 n. 21. It is a distinction without a difference. That the Clapper plaintiffs feared government action against others rather than directly against themselves was simply one among many reasons the Court held that the harm to the plaintiffs from this hypothetical surveillance was too speculative to generate standing. See 133 S.Ct. at 1148. It was not, however, the basis of the Supreme Court’s conclusion, established in standing law since Laird, that a subjective chilling effect in general is insufficient for standing unless the feared harm is certainly impending. See id. at 1152 (quoting Laird, 408 U.S. at 13-14, 92 S.Ct. 2318). This rule clearly still applies to the plaintiffs in our case.
The majority’s description of the statutory scheme as “not an inconvenience or burden, but wholesale disenfranchisement,” Maj. Op. at 364 n. 21, hyperbolizes the law’s actual effects. The plaintiffs themselves have repeatedly characterized the Pennsylvania laws’ collective effect as a “burden” on their constitutional rights but have not come close to alleging Pennsylvania “disenfranchises” them. See J.A. at 44 (“The application of Section 2911(b) and Section 2937 has severely impacted Plaintiffs and continues to impose severe burdens on them.”); id. at 47 (“Section 2911(b) and Section 2937, as applied, violate Plaintiffs’ freedoms of speech, petition, assembly, and association for political purposes, and their right to due process of law, as guaranteed by the First and Fourteenth Amendments, by imposing or threatening to impose substantial financial burdens on them....”); id. at 49 (“The threat of incurring such financial burdens injures Plaintiffs.”).
“[T]he core component of standing is an essential and unchanging part of the ease- or-controversy requirement of Article III.” Lujan, 504 U.S. at 560, 112 S.Ct. 2130. A subjective fear alone, no matter how deeply perceived, does not create a case or controversy the Constitution empowers us to hear unless that fear has a sufficient objective basis. The majority believes that the plaintiffs — who have alleged only two instances ever of cost assessments against non-major-party candidates and speculate costs may be assessed again— have shown such a basis here. I disagree because “hypothetical future harm that is not certainly impending” does not confer standing. Clapper, 133 S.Ct. at 1143. Thus I respectfully dissent.

. As discussed in the majority opinion, it is difficult to select an appropriate short-hand label for the plaintiffs in this case, who include the Constitution Party of Pennsylvania, the Libertarian Party of Pennsylvania, and the Green Party of Pennsylvania, as well as several party officials and current or former candidates. The majority’s preferred name, "Aspiring Parties,” seems fit only for the organizations (and even there it may be gratuitously laudatory). Because the standing analysis in cases like this one focuses on the claims made by a party in its complaint and supporting documents, I have used the term "plaintiffs” rather than "appellants.”

. I read the Supreme Court’s opinion in Susan B. Anthony List v. Driehaus, 573 U.S. -, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014), as simply an extension of the long-established special standing analysis in cases involving potential criminal prosecution for violating a prohibition on speech. See id. 134 S.Ct. at 2346 ("The burdensome Commission proceedings here are backed by the additional threat of criminal prosecution. We conclude that the combination of those two threats suffices to create an Article III injury under the circumstances of this case.”); see also, e.g,, Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) ("When contesting the constitutionality of a criminal statute, ‘it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights.’ ” (alterations in original) (emphasis added) (quoting Steffel v. Thompson, 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974))). This case involves neither the threat of criminal prosecution nor a prohibition of any kind, and thus the BabbittSteffel standing analysis does not apply.