**DISTRICT TITLE, Plaintiff,**

v.

**Anita K. WARREN, et al., Defendants.**

**Civil Action No. 14–1808 (ABJ)**

United States District Court,
District of Columbia.

Signed 12/15/2014

---

Brian Wood Thompson, David Howard Cox, Jackson & Campbell, P.C., Washington, DC, for Plaintiff.

Matthew August Lefande, Matthew August Lefande Attorney at Law PLLC, Arlington, VA, for Defendants.

## ORDER

AMY BERMAN JACKSON, United States District Judge

Plaintiff District Title brings this action against defendants Anita K. Warren and

Timothy Day and seeks a preliminary injunction against both defendants. Am. Compl. [Dkt. # 5]; Mot. of District Title for Prelim. Inj. [Dkt. # 6] ("Pl.'s Mot."); Mem. of P. & A. in Supp. of Pl.'s Mot. [Dkt. # 6–1] ("Pl.'s Mem."). The Court finds that plaintiff is likely to succeed on the merits of its case and will suffer irreparable harm if a preliminary injunction is not granted, and that the balance of the equities and the interests of the public also favor a preliminary injunction in this case at this time. Therefore, the Court will grant plaintiff's motion for a preliminary injunction.

## BACKGROUND

### I. Factual Background

The following facts have not been contested with any evidence or affidavits except where noted. Plaintiff is a real estate settlement company that handled the settlement of the sale of a property owned by defendant Warren on July 11, 2014. *See* Am. Compl. ¶¶ 1, 14; Opp. to Pl.'s Mot. [Dkt. # 12] ("Defs.' Opp.") at 3–4. Defendant Day is defendant Warren's adult son. Defs.' Opp. at 4. At the time of the property sale, $293,514.44 was owed to a mortgage lender, Wells Fargo. *See* Am. Compl. ¶¶ 9, 15. But plaintiff erroneously wired the funds owed to Wells Fargo to defendant Warren instead. Am. Compl. ¶ 15. Despite numerous requests by plaintiff to return the funds, defendants have declined to do so as of the date of this order. *See* Aff. of Jacquelynn N. Baker, Ex. 2 to Pl.'s Mot. [Dkt. # 6–4] ("Baker Aff.") ¶¶ 14–20; Aff. of Steven Sunsher, Ex. 1 to Pl.'s Mot. [Dkt. # 6–3] ("Sunsher Aff.") ¶¶ 16–21. Defendant Day has been on notice of the error since August 12, 2014, at the latest. *See* Ex. 2F to Baker Aff. [Dkt. # 6–4] (email exchange between District Title employee Jacquelynn "Jackie" Baker and defendant Day). Defendant Warren has been on notice of the error since August 27, 2014, at the latest. *See* Sunsher Aff. ¶ 16 (describing phone conversation with defendant Warren).

Plaintiff has produced evidence that on or about the date of the settlement, defendant Warren transferred $100,000 by a cashier's check made out to defendant Day and a third party, Anthony Silva.[1] Ex. 2 to Am. Compl. [Dkt. # 5]. The check was deposited in an account owned by Anthony and Suzanne Silva and processed on July 14, 2014. *Id.* In late July 2014, Anthony and Suzanne Silva purchased real property in Worcester County, Maryland with the address of 6 Boston Drive, Berlin, Maryland. Ex. 3 to Am. Compl. [Dkt. # 5] (copy of wire transfer of $60,600 from Silvas to Brennan Title Company); Ex. 4 to Am. Compl. [Dkt. # 5] (deed of trust). Plaintiff alleges that the funds used in that transaction came from defendant Warren and lawfully belonged to plaintiff. Am. Compl. ¶ 21.

In addition, on August 20, 2014, defendant Warren transferred $189,028.98 to the Brennan Title Company, Ex. 5 to Am. Compl. [Dkt. # 5], and on August 26, 2014, defendant Day purchased real property in Worcester County, Maryland with the address of 3 Boston Drive, Berlin, Maryland through the Brennan Title Company. Ex. 6 to Am. Compl. [Dkt. # 5].

On August 27, 2014, defendant Day deposited a cashier's check from defendant Warren in the amount of $33,000 in his bank account, Ex. 9 to Am. Compl. [Dkt. # 5], and on September 10, 2014, defendant Day deposited two more cashier's checks from defendant Warren in the amounts of $33,000 and $33,445. Ex. 7 to Am. Compl. [Dkt. # 5]; Ex. 8 to Am.

---

1. Plaintiff alleges that Silva is a relative of the defendants. Pl.'s Mem. at 4, ¶ 17.

Compl. [Dkt. # 5]. Plaintiff alleges that defendant Day made these deposits after he was served with the original complaint in this case. Am. Compl. ¶ 23. Defendant Day denies that he was ever properly served process in this case. Def. Day's Mot. to Dismiss [Dkt. # 10] ("Day Mot.") at 1.

## II. Procedural Background

Plaintiff filed its original complaint in the Superior Court for the District of Columbia on September 2, 2014. Compl., Notice of Removal [Dkt. # 1–1]. Plaintiff also filed a parallel action in the Circuit Court for Worcester County, Maryland on September 5, 2014. Maryland Judiciary Case Search, http://casesearch.courts.state.md.us/ (search for Worcester County Circuit Court case number 23–C–14–001158).

Defendants removed the Superior Court action to this Court on October 29, 2014. Notice of Removal [Dkt. # 1]. Plaintiff filed an amended complaint on November 10, 2014. Am. Compl. The amended complaint contains four counts. Count I, for breach of contract, is brought solely against defendant Warren. *Id.* ¶¶ 26–32. The remaining counts—for trover and conversion (Count II), unjust enrichment (Count III), and equitable and injunctive relief (Count IV) are brought against both

defendants. *Id.* ¶¶ 33–62. Plaintiff seeks relief including a judgment of at least $293,514.44 with prejudgment and post-judgment interest; equitable relief; an order that defendants provide an accounting; an order enjoining defendants from dissipating assets; and attorneys' fees and costs, with prejudgment and postjudgment interest. *Id.*, Prayer for Relief ¶¶ a–f.

On November 19, 2014, plaintiff filed a motion for a preliminary injunction, seeking to prevent defendants from further disbursing any of the $293,514.44 or from transferring any property. Pl.'s Mot. On December 4, 2014, defendants Day and Warren each filed separate motions to dismiss. Day Mot.; Mem. of P. & A. in Supp. of Day Mot. [Dkt. # 10] ("Day Mot."); Def. Warren's Mot. to Dismiss [Dkt. # 11] ("Warren Mot."); Mem. of P. & A. in Supp. of Warren Mot. [Dkt. # 11] ("Warren Mot."). In addition to challenging the sufficiency of the complaint, defendant Day contends in his motion to dismiss that he never received proper service of process, and that the Court lacks personal jurisdiction over him.[2] Day Mot. at 1. Defendants also jointly filed an opposition to plaintiff's motion for a preliminary injunction on that date. Defs.' Opp. Plaintiff filed a reply to defendants' opposition to its motion for a

---

**2.** Defendant Day characterizes the personal jurisdiction issue as a question of subject-matter jurisdiction. Day Mot. at 3–4. In defense of this position, Day invokes the doctrine of "derivative jurisdiction," which holds that "[i]f the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none." *Lambert Run Coal Co. v. Balt. & O.R. Co.*, 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671 (1922). But that doctrine does not transform a question of personal jurisdiction into a question of this Court's subject-matter jurisdiction. Moreover, the doctrine of derivative jurisdiction does not apply in this case. Defendants removed this case pursuant to 28 U.S.C. § 1441, Notice of Removal at 1, and "Congress has chosen to

abrogate the derivative jurisdiction doctrine for removals effectuated under" that provision. *McKoy–Shields v. First Washington Realty, Inc.*, No. 11–cv–01419 (RLW), 2012 WL 1076195, at *2 (D.D.C. March 30, 2012). Indeed, section 1441 expressly provides that "[t]he court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim." 28 U.S.C. § 1441(f). So the "derivative jurisdiction" doctrine would not apply here even if it did support defendant Day's argument, which it does not.

preliminary injunction on December 9, 2014. Reply to Defs.' Opp. [Dkt. # 16] ("Pl.'s Reply").

On December 8, 2014, the parties and the Court conferred in a teleconference and agreed to an abbreviated briefing schedule for defendants' motions to dismiss. The Court ordered plaintiff to file oppositions to defendants' motions to dismiss on December 9, 2014, and ordered defendants to file any replies to those oppositions on December 10, 2014. Minute Order (Dec. 8, 2014). On December 9, 2014, plaintiff filed its oppositions. Opp. to Day Mot. [Dkt. # 17]; Mem. of P. & A. in Opp. to Day Mot. [Dkt. # 17] ("Opp. to Day Mot."); Opp. to Warren Mot. [Dkt. # 18]; Mem. of P. & A. in Opp. to Warren Mot. [Dkt. # 18] ("Opp. to Warren Mot."). Defendants did not file any reply briefs on December 10, 2014.

During its review of the pleadings filed in this case, the Court discovered that the settlement contract signed by defendant Warren and plaintiff contained an alternative dispute resolution clause that required "mandatory, binding arbitration" of "[a]ll disputes, claims, or controversies of any kind and nature arising out of . . . the relationship among the parties and District Title." *See* Ex. 10 to Am. Compl. [Dkt. # 5] ¶ F(1). On December 4, 2014, the Court ordered the parties to "file brief submissions addressing the impact of the arbitration clause . . . on the Court's ability to hear this action" on or before December 9, 2014. Minute Order (Dec. 4, 2014). On December 9, 2014, defendant Warren filed a motion to compel arbitration and to stay all other proceedings, Def. Warren's Mot. to Compel Arbitration & Stay Proceedings [Dkt. # 14] ("Mot. to Compel"); Mem. of P. & A. in Supp. of Mot. to Compel [Dkt. # 14] ("Mot. to Compel"). That same day, plaintiff filed a memorandum expressing its opposition to arbitration in this case.

Mem. of Pl. Regarding Arbitration Provision [Dkt. # 19] ("Pl.'s Arb. Mem.").

On December 8, 2014, the Court ordered defendant Day to inform the Court by 5:00 p.m. the following day whether he would choose to waive either the defense of improper service or of lack of personal jurisdiction. Minute Order (Dec. 8, 2014). On December 9, 2014, defendant Day filed a notice stating that he intended "to preserve all of his defenses, including sufficiency of process and lack of jurisdiction under D.C. Code § 13–423." Notice [Dkt. # 15].

On December 12, 2014, the Court held a hearing on plaintiff's motion for a preliminary injunction and heard argument on the motion, the service issue, the personal jurisdiction issue, and the arbitration clause issue. Later that afternoon, without seeking leave of the Court to file a reply after the December 10 deadline, defendant Day filed a declaration in support of his motion to dismiss. Decl. of Timothy Day in Supp. of Day Mot. [Dkt. # 20] ("Day Decl.").

## ANALYSIS

On a motion for a preliminary injunction, as in all cases, "[t]he plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over [a] defendant." *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 457 (D.C.Cir.1990), citing *Reuber v. United States*, 750 F.2d 1039, 1052 (D.C.Cir.1984). But "[a]t the preliminary injunction stage, the plaintiff may meet this burden by showing 'a reasonable probability that personal jurisdiction can ultimately be established.'" *Khatib v. Alliance Bankshares Corp.*, 846 F.Supp.2d 18, 26 (D.D.C.2012); quoting *U.S. Secs. & Exch. Comm'n v. Lines Overseas Mgmt., Ltd.*, 2005 WL 3579139, at *2 (D.D.C. Jan. 4, 2006).

■ To obtain a preliminary injunction, a plaintiff must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction serves the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). Injunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that a plaintiff is entitled to it. *Id.* at 22, 129 S.Ct. 365.

The Court finds that plaintiff has made the showing required to obtain preliminary injunctive relief. First, to the extent that there are any doubts about the Court's personal jurisdiction over defendant Day in this matter, the Court finds that plaintiff has successfully shown " 'a reasonable probability that personal jurisdiction can ultimately be established.' " *Khatib*, 846 F.Supp.2d at 26, quoting *Lines Overseas Mgmt.*, 2005 WL 3579139, at *2. Second, the Court need not decide defendant Warren's motion to compel arbitration for purposes of this motion, but it notes that this defense may have been waived, and that the arbitration clause does not apply to defendant Day in any event. Finally, the Court finds that plaintiff has established that it is likely to succeed on the merits of its claims, that it is facing irreparable harm, that the balance of the equities tips in favor of granting its motion, and that an injunction would serve the public interest.

## I. Personal Jurisdiction

Defendant Day challenges the Court's personal jurisdiction over him on two grounds: that he never received proper service of process; and that the District of Columbia long-arm statute does not extend to him. *See* Day Mot. at 5–9. Defendant Warren does not challenge this Court's personal jurisdiction over her on any basis. *See generally* Warren Mot.

### A. Service of Process

■ Defendant Day contends that he did not receive service within 60 days of the filing of the complaint in Superior Court, as required by District of Columbia Superior Court Civil Rule 4(m). Day Mot. at 5. He also argues that the Superior Court denied a default against him on November 14, 2014 because "there was defective service of process upon him." *Id.* at 2, ¶ 9. Therefore, defendant Day says, this case should be dismissed as to him. *Id.* at 5.

Superior Court Rule 4(e)(2) provides that service may be effectuated by leaving the required materials "at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." The affidavits of service provided by plaintiff indicate that plaintiff attempted to serve defendant Day on September 6, 2014, by leaving materials with an adult male at Day's residence in Maryland who stated that he resided there with Day. Ex. 4 to Opp. to Day Mot. [Dkt. # 17–4]; Ex. 5 to Opp. to Day Mot. [Dkt. # 17–5].

Contrary to defendant Day's claims, the Superior Court denied the entry of default against Day not because service on him was deficient, but because the affidavit of service did not clearly show that the person who accepted service on Day's behalf was authorized to do so under the rules of the Superior Court. *See* Ex. 6 to Opp. to Day Mot. [Dkt. # 17–6] (Superior Court order denying entry of default). Furthermore, the Superior Court's order gave plaintiff until December 19, 2014, to cure this defect, *id.*, and plaintiff has now submitted a more detailed affidavit to the Superior Court. *See* Ex. 5 to Opp. to Day

Mot. So the denial of default is not fatal to plaintiff's efforts to serve defendant Day.

The revised affidavit of service indicates that the person who accepted service would not give his name to the process server. He informed the process server that defendant Day was not home, that he could accept service of the documents on Day's behalf, and that he resided at Day's Worcester County, Maryland property with defendant Day. Ex. 5 to Opp. to Day Mot. The person who accepted service is described as "a White male, approximately 32–38 years old, with blonde hair, approximately 5′10″ and weighing 175 lbs." *Id.*

In his pleadings, defendant Day offers no substantive arguments as to why this revised affidavit of service was insufficient. He also declined to meet the Court's December 10, 2014 deadline to file a reply in support of his motion to dismiss on this issue, or any other. But after the Court heard argument on plaintiff's motion on December 12, 2014, Day filed a declaration on this issue. Day Decl. In the declaration, Day does not deny that the Maryland property is his residence. *See id.* ¶ 3. But he states that "no person [has] co-reside[d]" with him at his home, and that he "know[s] of no person who matches the[ ] description of a white male with blond hair who would have ever been present in [his] home . . . . since [he] moved there." *Id.* ¶¶ 4, 6.

■ Although the Court need not consider this untimely filing, the Court finds that the declaration does not alter the fact that plaintiff has shown a reasonable probability that service on defendant Day was effective. *See Khatib,* 846 F.Supp.2d at 26. In the District of Columbia, there is a " 'presumption of truth attached to the statement in the process server's return' " that can only be overcome by " 'strong and convincing evidence.' " *Venison v. Robinson,* 756 A.2d 906, 910 (D.C.2000), quoting

*Firemen's Ins. Co. v. Belts,* 455 A.2d 908, 909 (D.C.1983). Defendant Day's bare, self-serving denial does not constitute "strong and convincing evidence."

Moreover, the Court notes that because defendants removed this case to federal court, Federal Rule of Civil Procedure 4 now governs the service issue. Fed. R. Civ. P. 81(c)(1) ("These [federal] rules apply to a civil action after it is removed from a state court."). Federal Rule 4(m) provides a 120–day time limit for service, Fed. R. Civ. P. 4(m), which has not yet expired in this case. Thus, to the extent plaintiff needs additional time to cure any defects in service that might exist, that time is available, and that provides another reason why there is a reasonable probability that plaintiff will ultimately prove that service has been accomplished.

### B. The District of Columbia Long–Arm Statute

Defendant Day also challenges this Court's personal jurisdiction over him on a second basis, arguing that the District of Columbia long-arm statute does not extend to him. Day Mot. at 5–7. Plaintiff does not contend that the Court has general personal jurisdiction over defendant Day, but rather that the Court may exercise specific personal jurisdiction over him under D.C. Code. § 13–423. Opp. to Day Mot. at 6. Section 13–423 provides in relevant part:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

. . .

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent

course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; ...

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C. Code. § 13–423(a)(4), (b). Plaintiff must not only demonstrate that the requirements of the long-arm statute are met, but it must show that Day has sufficient "minimum contacts" with this forum so that " 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C.Cir.2000), quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ Defendant Day contends that plaintiff cannot show that requirements of the long-arm statute are satisfied, but his arguments are unavailing. First, he notes that his mother gave him funds in Maryland and that he "subsequently negotiated them in Maryland," not the District of Columbia. Day Mot. at 7. But that contention does not undermine plaintiff's argument that defendant Day's actions in Maryland caused a tortious injury to plaintiff in the District. *See* D.C. Code § 13–423(a)(4).

Second, he claims that "[t]he Plaintiff can contrive no nexus between Day's prior practice as a CPA in his mother's home and his later purported expenditure of money gifted from her," so there can be no personal jurisdiction over him under D.C. Code 13–423(a)(4). *Id.* But there is no requirement that there be a relationship between the "persistent course of conduct" and the act causing tortious harm for purposes of this provision. *See Etchebarne-Bourdin v. Radice*, 982 A.2d 752, 761 (D.C. 2009) ("[W]here the tortious act is alleged to have caused injury in the District of Columbia, and the claim arises from such act and injury, no additional nexus need be shown between the claim and the persistent course of conduct."). Rather, the persistent course of conduct requirement is a "plus factor" that "serve[s] to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." *Crane v. Carr*, 814 F.2d 758, 763 (D.C.Cir.1987).

The Court finds that plaintiff has satisfied the first prong of D.C. Code § 14–423(a)(4), as well as D.C. Code § 14–423(b), since the trover, conversion, and unjust enrichment claims against Day allege acts outside of the District of Columbia that caused tortious injury within it. The Court further finds that plaintiff is likely to be able to demonstrate a persistent course of conduct in the District on the part of defendant Day, satisfying the second element of the provision.

■ To establish the persistent course of conduct element, plaintiff points to Day's active involvement in the sale of defendant Warren's property and in the subsequent communications concerning the overpayment. Opp. to Day Mot. at 7–8. It states that Day communicated "on multiple occasions" with plaintiff's employees about the settlement, and that Day attended the settlement meeting on July 7, 2014 in person. *Id.*; Baker Aff. ¶ 10. These claims about Day's involvement in his mother's property sale are supported by emails that plaintiff has attached as exhibits to its pleadings. *See, e.g.*, Ex. 1A to Sunsher Aff. [Dkt. # 6–3] (pre-settlement email exchange between Jackie Baker and defendant Day); Ex. 1B to Sunsher Aff. [Dkt. # 6–3] (same); Ex. 1C to Sunsher Aff. [Dkt. 6–3] (same); Ex. 1D to Sunsher Aff.

[Dkt. # 6–3] (same); Ex. 1E to Sunsher Aff. [Dkt. # 6–3] (same).

In addition, plaintiff notes that Day held himself out as a resident of the District of Columbia by presenting a valid District of Columbia driver's license as identification when he purchased the property in Maryland on August 26, 2014. *See* Ex. 8 to Opp. to Day Mot. [Dkt. # 17–8] (photocopy of driver's license). Presumably, defendant Day also presented himself as a resident of the District of Columbia to the District of Columbia Department of Motor Vehicles when he obtained the license in the first place. At the hearing on plaintiff's motion for a preliminary injunction, plaintiff clarified that the driver's license was issued in 2011 and was not set to expire until 2019. The license identifies Day's address as the address of the property that defendant Warren formerly owned in the District of Columbia. *Id.*

The Court finds that plaintiff's allegations are likely to be deemed sufficient to show that defendant Day's affiliations with the District of Columbia are more than "scant." *See Crane*, 814 F.2d at 763. Moreover, defendant Day himself informed the Court that he formerly practiced as a CPA in the District of Columbia. Day Mot. at 7. In light of all of this evidence, the Court concludes that it is likely that plaintiff can succeed in establishing that the District of Columbia long-arm statute reaches defendant Day.[3] *See Khatib*, 846 F.Supp.2d at 26

Finally, for all of these reasons, the Court concludes that haling defendant Day into court in the District of Columbia would not " 'offend traditional notions of fair play and substantial justice.' " *GTE New Media Servs.*, 199 F.3d at 1347, quoting *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154. Thus, it seems reasonably likely that this Court can exercise personal jurisdiction over defendant Day.

## II. Motion to Compel Arbitration

■ The Court does not need to address defendant Warren's motion to compel arbitration in order to resolve plaintiff's motion for a preliminary injunction. The Court notes, however, that "failure to invoke arbitration at the first available opportunity will presumptively extinguish a [defendant's] ability later to opt for arbitration." *Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 924 (D.C.Cir.2011). Moreover, a court need not grant an untimely motion for a stay pending arbitration if the delay would cause prejudice to the other party or to the court. *Id.* at 921, 923 (affirming district court's denial of stay pending arbitration where party seeking stay had "answered the complaint and moved from state to federal court, and from the court to mediation, all before . . . even indicating he intended to arbitrate his claims").

Here, defendant Warren removed this case from Superior Court and filed a motion to dismiss and an opposition to plaintiff's motion for a preliminary injunction without raising the arbitration issue. *See* Notice of Removal; Warren Mot.; Defs.' Opp. It appears that defendant Warren has raised the issue now only because the Court brought it to her attention. *See* Min-

---

**3.** The Court further notes that it is ironic, to say the least, that defendant Day and his co-defendants in the Maryland lawsuit have moved to dismiss that action for *forum non conveniens*, arguing that "there is no element of proof available to the Defendants which could prove or disprove the Plaintiff's underlying claims which do [sic] not lie in the District of Columbia more than 130 miles away." Ex. 9 to Opp. to Day Mot. [Dkt. # 17–9] at 4. They contend that the Maryland forum is "wildly inconvenient," and that being forced to defend there would be "profoundly oppressive and vexatious." *Id.* at 5. But defendant Day cannot have it both ways: he must be amenable to suit somewhere.

ute Order (Dec. 4, 2014). Plaintiff contends that the Court should not refer this matter to arbitration and stay the case because defendant Day is not a party to the contract, and the alternative dispute mechanism would not provide a means to preserve the funds in the dispute pending the outcome of the proceeding. Pl.'s Arb. Mem. at 4–8. So there would be grounds to conclude that defendant Warren has forfeited her ability to compel arbitration, but the Court will defer ruling on the motion at this time.

## III. Motion for Preliminary Injunction

The Court finds that plaintiff is likely to succeed on the merits of its claims and will suffer irreparable harm without a preliminary injunction in this case. Moreover, the Court finds that the balance of the equities tips in favor of granting preliminary injunctive relief here and that an injunction would serve the interests of the public. Therefore, the Court will grant plaintiff's motion for a preliminary injunction, subject to the conditions set forth below.

### A. Likelihood of Success on the Merits

Defendants have essentially conceded that plaintiff's breach of contract claim against defendant Warren is likely to succeed on the merits. See Defs.' Opp. at 2 (including the following heading: "1. The [plaintiff] fails to demonstrate a likelihood of success on the merits but for perhaps a bald breach of contract claim against Defendant Warren"). So the Court could issue a preliminary injunction against defendant Warren on that basis alone if the other requirements were met. But the Court also finds that plaintiff's other claims—for trover and conversion, unjust enrichment, and equitable relief—are likely to succeed on the merits.

### 1. Trover and Conversion

"Conversion is the substantive tort theory which underlay the ancient common law form of action for trover," *Pearson v. Dodd*, 410 F.2d 701, 706 (D.C.Cir.1969), and so for purposes of this motion, trover and conversion are one and the same. "Under District of Columbia law, conversion is the 'unlawful exercise of ownership, dominion, and control over the personalty of another in denial or repudiation of his right to such property.'" *Edwards v. Ocwen Loan Serv., LLC*, 24 F.Supp.3d 21, 30 (D.D.C.2014), quoting *McNamara v. Picken*, 950 F.Supp.2d 193, 194 (D.D.C.2013). If a plaintiff alleges that money has been converted, the plaintiff must 'ha[ve] the right to a specific identifiable fund of money.'" *Id.* at 30, quoting *McNamara*, 950 F.Supp.2d at 194.

There is no question that plaintiff overpaid defendant Warren by the specific amount of $293,514.44 and that defendants became aware of the overpayment in August, 2014, at the latest. It is also undisputed that defendants have declined to return the funds to plaintiff. Defendants contend, however, that because any funds plaintiff accidentally wired to defendant Warren were commingled with funds to which she was lawfully entitled, it is impossible to determine now which funds are owed to plaintiff. Defs.' Opp. at 3–4. But the amount by which plaintiff overpaid defendant Warren is both specific and identifiable; this case can be distinguished from those cited by the defendants because here, the parties can quantify the amount of the unjustly retained funds to the penny. See *Edwards*, 24 F.Supp.3d at 31 (dismissing claim for conversion where "plaintiff is owed *at most* some unspecified, unidentified portion of a larger pool of funds"); *McNamara*, 950 F.Supp.2d at 195 (dismissing claim for conversion where plaintiff "argue[d] only that general part-

nership funds—which were derived in part from services he provided—were misdirected" because "such fungible cash is precisely the type of fund that may not underlie a claim for conversion" and because funds contributed to a partnership became the property of the partnership). Thus, the Court finds that plaintiff is likely to succeed on the merits of its claim for trover and conversion.

### 2. Unjust Enrichment

 "Unjust enrichment occurs when a person retains a benefit (usually money) which in justice and equity belongs to another." *4934, Inc. v. D.C. Dep't of Emp't Servs.*, 605 A.2d 50, 55 (D.C.1992). "[T]he doctrine of unjust enrichment depends on whether it is fair and just for the recipient to retain the benefit, not on whether the person or persons who bestowed the benefit had any duty to do so." *Id.* at 56. In the District of Columbia, "a party asserting a claim for unjust enrichment must show that: '(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust.' " *Plesha v. Ferguson*, 725 F.Supp.2d 106, 111 (D.D.C.2010), quoting *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C.2005).

 Although there is an express contract between plaintiff and defendant Warren that bars an unjust enrichment claim against her, *see* Ex. 10 to Am. Compl., there is no contract between plaintiff and defendant Day.[4] The Court finds that plaintiff may well be able to show that it

conferred a benefit on Day that he has unjustly retained, and so this claim is likely to succeed on the merits as to that defendant.

### 3. Equitable Relief

In the amended complaint, plaintiff alleges that defendants have acted in bad faith, deliberately, and with knowledge of their wrongdoing, Am. Compl. ¶¶ 55–62, and asks the Court to order defendants to make an accounting of their funds, to prevent further distribution or spreading of the funds, to impose attorney's fees, and to otherwise fully compensate plaintiff. *Id.* Prayer for Relief ¶¶ a–f. Defendants have not offered any arguments as to why these claims for relief are unlikely to succeed beyond the contentions outlined above. As the Court has already determined that the same arguments by defendants are insufficient to undermine plaintiff's claims, the Court finds that plaintiff's claims for equitable relief are also likely to succeed on the merits.

### B. Irreparable Harm

 To show irreparable harm, a plaintiff must demonstrate that the harm has occurred in the past and is likely to occur again, or that the harm is certain to occur in the near future. *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C.Cir.1985). A plaintiff must also show the alleged harm will "directly result" from the action that plaintiff seeks to enjoin. *Id.* The harm "must be both certain and great" and "actual and not theoretical." *Id.* And it cannot arise from plaintiff's own actions. *Pennsyl-*

---

4. Defendants contend that the existence of a contract covering the subject matter of a dispute is sufficient to bar an action for unjust enrichment even if only some of the parties to the lawsuit are party to the contract. Defs.' Opp. at 6, citing *Prickett v. N.Y. Life Ins. Co.*, 896 F.Supp.2d 236, 249 (S.D.N.Y.2012). But

defendants have not provided the Court with any authority from this Circuit—or from any other court outside New York—that supports this argument. And, in any event, the trover and conversion claim is enough to justify preliminary injunctive relief against defendant Day.

*vania v. New Jersey*, 426 U.S. 660, 664, 96 S.Ct. 2333, 49 L.Ed.2d 124 (1976) (per curiam) (holding that litigant cannot "be heard to complain about damage inflicted by its own hand"); *Lee v. Christian Coal. of Am., Inc.*, 160 F.Supp.2d 14, 33 (D.D.C. 2001) (holding that a "preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted") (citations omitted); *see also Safari Club Int'l v. Salazar*, 852 F.Supp.2d 102, 123 (D.D.C.2012) (no irreparable harm when plaintiffs could avoid harm).

 Plaintiff does not deny that, but for its own error, defendant Warren would have never received the funds that are at issue in this case. But plaintiff contends that defendants' knowing and willful failure to return the funds, even after receiving notice of plaintiff's error, threatens it with irreparable harm to its business and reputation. Pl.'s Mem. at 6–7.

The Court finds that any harm to plaintiff's reputation can be laid squarely at plaintiff's own feet, and so does not constitute a basis for preliminary injunctive relief. *See Pennsylvania v. New Jersey*, 426 U.S. at 664, 96 S.Ct. 2333. But the harm to plaintiff's business is another matter. Although "recoverable economic losses are not considered irreparable," *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1507 (D.C.Cir.1995), the purpose of plaintiff's motion appears to be to ensure that the economic losses it has suffered remain "recoverable." Thus, the Court finds that plaintiff has successfully demonstrated that defendants have harmed it by retaining and distributing its funds, and that, given defendants' continued refusal to cease disbursing the funds and return them, this harm is likely to continue and worsen. *See Wis. Gas. Co.*, 758 F.2d at 674.

## C. Balance of the Equities and the Interests of the Public

 The Court finds that an order enjoining defendants from further dissipating funds to which they are not entitled will not harm defendants, but rather, will maintain the status quo. Therefore, the balance of the equities favors the injunctive relief plaintiff seeks. Likewise, it is in the interest of the public to ensure that money is not unlawfully withheld from its rightful owner.

## IV. Order of Preliminary Injunctive Relief

For the reasons outlined above, plaintiff's motion for a preliminary injunction is hereby **GRANTED**, and it is **ORDERED** that:

If defendants have not <u>either</u>:

(a) Posted a surety bond in this case in the amount of $293,514.44; <u>or</u>

(b) Placed $293,514.44 in an escrow account and filed proof of that with the Court; <u>or</u>

(c) Returned $293,514.44 to plaintiff; <u>or</u>

(d) Satisfied the pay-off amount owed to Wells Fargo with respect to loan number 128178, *see* Ex. 1 to Am. Compl., and filed proof thereof with the Court;

by 5:00 p.m. on Wednesday, December 17, then defendants are hereby **ORDERED** as follows:

(a) On or before December 19, 2014, defendants must produce to plaintiff copies of monthly statements from July 11, 2014 until the present for <u>all</u> checking, savings, money market, or investment accounts in which they have an ownership or beneficial interest, either individually or jointly with each other or any other person;

(b) On or before December 19, 2014, defendants must produce to plaintiff

**30**

a list of all safe deposit boxes and the banks at which they are located which they own either individually or jointly with any other person;

(c) Defendants may not sell, transfer, or encumber any real property in which they have any ownership interest in the District of Columbia, Maryland, or elsewhere, pending the resolution of this case;

(d) Defendants may not sell, transfer, or encumber the property located at 3 Boston Drive, Berlin, MD 21811;

(e) Beginning on Friday, December 19, 2014, and continuing each Friday thereafter until the resolution of this case, defendants must provide plaintiff with weekly statements detailing every withdrawal or transfer of funds from any checking, savings, money market or investment account and list every expenditure in excess of $500.00 (whether paid for by cash, credit card, or otherwise) during the previous seven days, identifying the date, amount, and the payee or recipient;

(f) Defendants may not remove any funds currently stored in any safe deposit box pending the resolution of this case; and

(g) Defendants may not withdraw or transfer more than $500.00 from any checking, savings, money market, or investment account at any one time pending the resolution of this case without express authorization of the Court.

If compliance with these conditions reveals any further dissipation of assets, the Court will revise this order accordingly.

**SO ORDERED.**